# CALIFANO, SECRETARY OF HEALTH, EDUCATION, AND WELFARE *v.* YAMASAKI ET AL.

No. 77–1511.   Argued March 19, 1979—Decided June 20, 1979

BLACKMUN, J., delivered the opinion of the Court, in which all other Members joined, except POWELL, J., who took no part in the consideration or decision of the case.

*Peter Buscemi* argued the cause for petitioner *pro hac vice.* With him on the briefs were *Solicitor General McCree, Assistant Attorney General Babcock,* and *William Kanter.*

*Stanley E. Levin* argued the cause for respondents. With him on the brief was *Jeff Spence.**

MR. JUSTICE BLACKMUN delivered the opinion of the Court.

Petitioner, the Secretary of the Department of Health, Education, and Welfare (HEW), has determined that respondents, beneficiaries under the Social Security Act, have been overpaid. He seeks to recoup those overpayments by withholding future benefits to which respondents would otherwise be entitled. Respondents in turn have requested reconsideration or waiver of recoupment under § 204 of the Act, 42 U. S. C. § 404. The primary questions in this case are whether petitioner must grant respondents the opportunity for an oral hearing before recoupment begins, and whether jurisdiction under § 205 (g) of the Act, 42 U. S. C. § 405 (g), permits a federal district court to certify a nationwide class and grant injunctive relief.

I

Section 204 (a)(1) of the Social Security Act, 53 Stat. 1368, as amended, 42 U. S. C. § 404 (a)(1), authorizes the recovery of overpayments made to a beneficiary under the old-age, survivors', or disability insurance programs administered by HEW. In particular, it permits the Secretary to recoup

---

*Briefs of *amici curiae* urging affirmance were filed by *J. Albert Woll* and *Laurence Gold* for the American Federation of Labor and Congress of Industrial Organizations; by *Edward C. King* for the Gray Panthers; and by *Charles A. Bane, Thomas D. Barr, Norman Redlich, Robert A. Murphy, Norman J. Chachkin, Richard S. Kohn,* and *Stuart E. Schmitz* for the Lawyers' Committee for Civil Rights Under Law.

erroneous overpayments by decreasing future payments to which the overpaid person is entitled.

Section 204 (b), however, expressly limits the recoupment authority conferred by § 204 (a)(1). Section 204 (b), as set forth in 42 U. S. C. § 404 (b), commands that

> "there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." [1]

The Secretary has undertaken to define the terms employed in § 204 (b). Under his regulations, "without fault" means that the recipient neither knew nor should have known that the overpayment or the information on which it was based was incorrect. 20 CFR § 404.507 (1978). For example, a recipient who justifiably relied upon erroneous information from

---

[1] In pertinent part, § 204 (a), as set forth in 42 U. S. C. § 404 (a), provides:

"Whenever the Secretary finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made, under regulations prescribed by the Secretary, as follows:

"(1) With respect to payment to a person [of] more than the correct amount, the Secretary shall decrease any payment under this subchapter to which such overpaid person is entitled, or shall require such overpaid person or his estate to refund the amount in excess of the correct amount, or shall decrease any payment under this subchapter payable to his estate or to any other person on the basis of the wages and self-employment income which were the basis of the payments of such overpaid person, or shall apply any combination of the foregoing."

Section 204 (b), as set forth in 42 U. S. C. § 404 (b), reads in full:

"In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience."

an official source within the Social Security Administration would be "without fault." § 404.510.

The regulations say that to "defeat the purpose of the subchapter" is to "deprive a person of income required for ordinary and necessary living expenses." § 404.508 (a). Those expenses are defined to include, among other things, food, rent, and medical bills. §§ 404.508 (a)(1) and (2). Recoupment is "against equity and good conscience" when the recipient "because of a notice that such payment would be made or by reason of the incorrect payment, relinquished a valuable right . . . or changed his position for the worse." § 404.509. An example of detrimental reliance that would be sufficient is permitting private hospital insurance to lapse in the mistaken expectation of receiving federal hospital benefits. *Ibid.*

The Secretary's practice is to make an *ex parte* determination under § 204 (a) that an overpayment has been made, to notify the recipient of that determination, and then to shift to the recipient the burden of either (i) seeking reconsideration to contest the accuracy of that determination, or (ii) asking the Secretary to forgive the debt and waive recovery in accordance with § 204 (b).[2] If a recipient files a written request for reconsideration or waiver, recoupment is deferred pending action on that request. Social Security Claims Manual §§ 5503.2 (c), 5503.4 (b) (Dec. 1978) (Claims Manual). The papers are sent to one of the seven regional offices where the request is reviewed.

If the regional office decision goes against the recipient, recoupment begins. The recipient's monthly benefits are reduced or terminated[3] until the overpayment has been re-

---

[2] Although during 1977 the average overpayment to old-age and survivors' insurance beneficiaries who were overpaid exceeded $500, only 3.4% of those thus subject to recoupment sought waiver. Brief for Petitioner 45, and n. 33. These figures do not include disability beneficiaries. *Ibid.* See also *Elliott* v. *Weinberger,* 371 F. Supp. 960, 967 (Haw. 1974).

[3] The Secretary has altered his procedures in several respects since the initiation of this litigation, including: (i) rather than terminate all bene-

couped. Only if the recipient continues to object is he given an opportunity to present his story in person to someone with authority to decide his case. That opportunity takes the form of an on-the-record *de novo* evidential hearing before an independent hearing examiner. 20 CFR §§ 404.917, 404.931 (1978). The recipient may seek subsequent review by the Appeals Council, § 404.945, and finally by a federal court. § 205 (g) of the Act, 42 U. S. C. § 405 (g). If it is decided that the Secretary's initial determination was in error, the amounts wrongfully recouped are repaid.

## II

### The *Elliott* Case [4]

The Secretary overpaid the Hawaii respondents,[5] and notified them of his determination to recoup the overpayments. After unsuccessful attempts to obtain administrative relief, they brought suit in the United States District Court for the District of Hawaii challenging the legality of the Secretary's recoupment procedures. They alleged that, because the

---

fits until recoupment is completed, the Secretary now in nonfraud cases usually reduces the recipient's monthly payments by only 25%, see Claims Manual § 5515 (Jan. 1979); and (ii) recipients who report excessive earnings and are found to have been overpaid now receive notice before, rather than after, recoupment begins. See *Elliott* v. *Weinberger*, 564 F. 2d 1219, 1223 (CA9 1977). Neither party contends that these changes moot this case.

[4] Respondent Evelyn Elliott died in 1973. Counsel for the respondent class moved to substitute Nancy Yamasaki as the respondent named in the caption of the case in this Court, and that motion was granted. 441 U. S. 959 (1979). In order to be consistent with the heretofore published reports of these cases, we refer to the decisions in the District Courts and Court of Appeals by their original captions.

[5] For respondents Isabelle Ortiz, Jordan Silva, and John Vaquilar, the Secretary's determination was based on annual excess earnings reports they filed. The Secretary determined that respondents Raymond Gaines and Nancy Yamasaki were overpaid because of administrative errors. *Elliott* v. *Weinberger*, 371 F. Supp., at 965–966.

notice they received was inadequate and because they were not given an opportunity for an oral hearing before recoupment began, the recoupment procedures violated both § 204 of the Act and the Fifth Amendment of the Constitution. They sought class certification, and requested both declaratory and injunctive relief that would require the Secretary to cease future recoupment until such time as he provided the class with adequate notice and opportunity for a hearing. App. 11–21.

The District Court certified a class of "all social security old age and disability benefit recipients resident in the State of Hawaii, who are being or will be subjected to adjustment of their social security benefits pursuant to 42 U. S. C. §§ 404 (a) and (b) without adequate prior notice of the grounds for such action and without a prior hearing on disputed issues relating to such actions." *Id.*, at 35. The court found jurisdiction under the mandamus statute, 28 U. S. C. § 1361, and granted relief to respondents. The court said that due process required that the Secretary provide an opportunity for an informal oral hearing before an independent decisionmaker prior to recoupment. In so holding, the court relied on *Goldberg* v. *Kelly*, 397 U. S. 254 (1970), which determined that, under the Due Process Clause, a statutory right to welfare benefits could not be terminated without prior notice and opportunity for an evidential hearing. The court also held that the Constitution required that the initial overpayment notice be modified to inform the recipient more fully concerning recoupment procedures. Although the court did not discuss respondents' statutory claim, it granted judgment for respondents on both statutory and constitutional grounds and ordered injunctive relief for the class. *Elliott* v. *Weinberger*, 371 F. Supp. 960 (1974).

### The *Buffington* Case

Relying on annual earnings reports, the Secretary determined that the individual respondents in *Buffington* had been

overpaid for previous years.[6] After receiving notice, both named respondents sought administrative relief, but were unable to halt recoupment. They then brought suit in the United States District Court for the Western District of Washington. They, too, alleged that the Secretary's recoupment procedures were contrary to both § 204 and the Due Process Clause of the Fifth Amendment. They requested certification of a nationwide class, an injunction ordering repayment of amounts unlawfully withheld, and declaratory and mandamus relief that would require the Secretary to provide notice and an opportunity for a hearing before recoupment began again. App. 188–201.

The District Court certified a nationwide class composed of "all individuals eligible for [old-age and survivors' benefits] whose benefits have been or will be reduced or otherwise adjusted without prior notice and opportunity for a hearing." The court, however, excluded from the class residents of Hawaii and the Eastern District of Pennsylvania, where suits raising similar issues were known to have been brought. *Id.*, at 259. See, *e. g., Mattern* v. *Weinberger*, 519 F. 2d 150 (CA3 1975). As a precautionary measure, the court also excluded all persons who had participated as plaintiffs or members of a plaintiff class in litigation against the Secretary on similar issues, if a decision on the merits previously had been rendered. App. 259–260.

The court then granted summary judgment for the class. The court found jurisdiction under the mandamus statute, 28 U. S. C. § 1361.[7] It enjoined the Secretary from ordering

---

[6] Respondent Fannie Buffington received wife's benefits. Her husband filed a report which revealed that his earnings had exceeded the statutory limit. Respondent Frances Biner was asked to file an earnings report for 1972 after a check with her employer showed that her earnings exceeded those previously reported. *Elliott* v. *Weinberger*, 564 F. 2d, at 1224–1225.

[7] The District Court also asserted jurisdiction under the Administrative Procedure Act, 5 U. S. C. § 701 *et seq.* Thereafter, in *Califano* v. *Sanders*, 430 U. S. 99 (1977), however, this Court held that that Act does not

recoupment without having provided recipients with a prior opportunity for an informal hearing before an independent decisionmaker. The court also ordered that the initial notice be amended to provide more information about recoupment procedures. *Buffington* v. *Weinberger,* Civ. No. 734–73C2 (WD Wash. Oct. 22, 1974). App. 262–265.

## The Court of Appeals

The United States Court of Appeals for the Ninth Circuit consolidated the two cases for disposition on appeal. In an unreported opinion, *Elliott* v. *Weinberger,* Nos. 74–1611 and 74–3118 (Oct. 1, 1975), App. to Pet. for Cert. 40A–84A, that court found that the complaints presented substantial constitutional questions and so § 1361 mandamus jurisdiction was proper. It upheld the certification of the classes under Fed. Rule Civ. Proc. 23 (b)(2), finding counsel was sufficiently skilled and experienced to represent the class. It rejected the Secretary's contention that a nationwide class should not have been certified. It found nothing in Rule 23 indicating that such a class was improper, and it believed as a practical matter that, because respondents did not seek damages, no manageability problems were present. It indicated that to require recipients to sue individually would result in an unnecessary duplication of actions, the evil that Rule 23 was designed to prevent. On the merits, the Court of Appeals, without directly addressing respondents' statutory claims, affirmed the holdings that the Secretary's recoupment procedures were unconstitutional.

Subsequent to that decision, this Court, in *Mathews* v. *Eldridge,* 424 U. S. 319 (1976), held that the Due Process Clause does not require an oral hearing prior to termination of Social Security disability insurance benefits. We then granted petitions for writs of certiorari filed by the Secretary

provide a grant of federal-court jurisdiction. Respondents do not rely on that statute here.

both in this case and in *Mattern, supra,* vacated the judgments below, and remanded the cases for further consideration in light of *Eldridge.* 425 U. S. 987 (1976).

On remand, the Court of Appeals adhered to the essential features of its original decision. *Elliott* v. *Weinberger,* 564 F. 2d 1219 (1977). The court reaffirmed its holding that it had jurisdiction under the mandamus statute. It noted that, while *Eldridge* had indicated that named plaintiffs would be able to assert jurisdiction based on § 205 (g) under *Weinberger* v. *Salfi,* 422 U. S. 749, 755, 764 (1975), there was some doubt as to whether that statute would provide jurisdiction for a class action seeking injunctive relief, and therefore the extraordinary remedy of mandamus could be invoked. The court found that these actions were not foreclosed by the jurisdictional limitations contained in § 205 (h), because these actions were brought to enforce constitutional rights, not "to recover on any claim" for benefits.

On the merits, the court found *Eldridge* distinguishable. One of three grounds cited in support of this conclusion is of particular relevance here. The court expressly found that the Secretary's procedures for handling waivers created an undue risk of erroneous deprivation. It said that, unlike the medical decision at issue in *Eldridge,* the grant of a waiver frequently depended on credibility, which could not be ascertained from the written submission on which the Secretary relied. The court thus held that when waiver was requested, the Due Process Clause required that the recipient be given an oral hearing before recoupment begins. The court said a prior hearing was not required, however, in § 204 (a) reconsideration cases if the dispute was a routine one centering on a computational error or a payment problem that did not demand an evaluation of credibility.[8] The court specified

---

[8] The United States Court of Appeals for the Third Circuit on remand reaffirmed its prior holding that the Due Process Clause required an oral hearing prior to recoupment when waiver was requested under § 204 (b),

six requirements that the oral hearing should meet, including rights to receive notice, to submit evidence, to cross-examine witnesses, to have counsel, to have an impartial hearing officer, and to receive a written decision. The court did not require that a transcript of the hearing be made. 564 F. 2d, at 1235.

The court also held that the notice must be "plainly and clearly communicated." *Ibid.* The court suggested that this could be accomplished by including in the notice such matters as the reason for overpayment, a statement of the right to request reconsideration or waiver, the forms available for that purpose, a description of the nature of reconsideration and waiver, and notice of the right to a prerecoupment hearing. *Id.,* at 1236.

The Secretary filed a petition for a writ of certiorari seeking review of both the holding that the Due Process Clause required a prerecoupment oral hearing, and the determination that the class was properly certified. The Secretary, however, did not request review of the holding that his notice of recoupment was constitutionally defective. Certiorari was granted. *Califano* v. *Elliott,* 439 U. S. 816 (1978).

## III

A court presented with both statutory and constitutional grounds to support the relief requested usually should pass on the statutory claim before considering the constitutional question. *New York City Transit Authority* v. *Beazer,* 440 U. S. 568, 582–583, and n. 22 (1979); *United States* v. *CIO,* 335 U. S. 106, 110 (1948); *Ashwander* v. *TVA,* 297 U. S. 288, 347 (1936) (concurring opinion). Due respect for the coordinate branches of government, as well as a reluctance when conscious of fallibility to speak with our utmost finality, see *Brown* v. *Allen,* 344 U. S. 443, 540 (1953) (Jackson, J., con-

---

but it said that no such hearing was ever required when reconsideration was requested under § 204 (a). *Mattern* v. *Mathews,* 582 F. 2d 248 (1978), cert. pending *sub nom. Califano* v. *Mattern,* No. 78–699.

curring in result), counsels against unnecessary constitutional adjudication. And if "a construction of the statute is fairly possible by which [a serious doubt of constitutionality] may be avoided," *Crowell* v. *Benson,* 285 U. S. 22, 62 (1932), a court should adopt that construction. In particular, this Court has been willing to assume a congressional solicitude for fair procedure, absent explicit statutory language to the contrary. See *Greene* v. *McElroy,* 360 U. S. 474, 507–508 (1959).

The District Courts and Court of Appeals in the cases now before us gave these principles somewhat short shrift in declining to pass expressly on respondents' contention that § 204 itself requires a prerecoupment oral hearing. We turn to the statute first, and find that it fairly may be read to require a prerecoupment decision by the Secretary. With respect to § 204 (a) reconsideration as to whether overpayment occurred, we agree that the statute does not require that the decision involve a prior oral hearing, and we reject respondents' contention that the Constitution does so. With respect to § 204 (b) waiver of the Secretary's right to recoup, however, because the nature of the statutory standards makes a hearing essential, we find it unnecessary to determine whether the Constitution would require a similar result.

## A

On its face, § 204 requires that the Secretary make a pre-recoupment waiver decision, and that the decision, like that concerning the fact of the overpayment, be accurate. In the imperative voice,[9] it says "there shall be no adjustment of

---

[9] A number of statutes authorizing the recovery of federal payments make an exception for cases that are "against equity and good conscience." Most are entirely permissive. They provide that recovery "is not required," *e. g.,* 10 U. S. C. §§ 1442, 1453 (serviceman's family annuity and survivors' benefit); or that an agency "may waive" recovery if a proper showing is made, 5 U. S. C. § 4108 (c) (civil service training expenses), 5 U. S. C. § 5922 (b)(2) (foreign station allowances); or that the agency

payments to, or recovery by the United States from, any person" who qualifies for waiver. See *Mattern* v. *Weinberger,* 519 F. 2d, at 166, and n. 32. Echoing this requirement, § 204 (a) says that only "proper" adjustments or recoveries are to be made. The implication is that a recoupment from a person qualifying under § 204 (b) would not be "proper."

Insofar as § 204 is read to require a prerecoupment decision, the reading is in accord with the manner in which the Secretary presently administers the statute. No recoupment is made until a preliminary waiver or reconsideration decision has taken place, either by default after the recipient has received proper notice, or by review of a written request. Claims Manual §§ 5503.2 (c), 5503.4 (b). This interpretation is also reinforced by a comparison with other sections of the

---

head "shall make such provision as he finds appropriate", 42 U. S. C. § 1383 (b) (supplemental security income); or simply that recovery "may be waived," 10 U. S. C. § 2774 (a) (military pay).

In contrast, § 204 is mandatory in form. It says "there shall be no" recovery when waiver is proper. In this regard, it resembles the "equity and good conscience" waiver provisions found in only four other statutes: 38 U. S. C. § 3102 (a) (veterans' benefits); 42 U. S. C. § 1395gg (c) (Medicare); 45 U. S. C. § 231i (c) (Railroad Retirement Act of 1974); 45 U. S. C. § 352 (d) (Railroad Unemployment Insurance Act). Even those statutes are not identical to § 204 in all material respects. While the use of the word "shall," particularly with reference to an equitable decision, does not eliminate all discretion, see *Hecht Co.* v. *Bowles,* 321 U. S. 321, 327–331 (1944), it at least imposes on the Secretary a duty to decide. And here where the provision for recovery, § 204 (a), and the provision for waiver, § 204 (b), are phrased in equally mandatory terms, it is reasonable to infer that in this particular statute Congress did not intend to exalt recovery over waiver.

The legislative history of § 204 (b) indicates merely that Congress intended to make recovery more equitable by authorizing waiver. See H. R. Rep. No. 728, 76th Cong., 1st Sess., 19 (1939); Hearings on Social Security before the House Committee on Ways and Means, 76th Cong., 1st Sess., 2287–2288 (1939); S. Rep. No. 404, 89th Cong., 1st Sess., pt. 1, p. 256 (1965); S. Rep. No. 744, 90th Cong., 1st Sess., 257 (1967).

Social Security Act. Section 204 is strikingly unlike § 225,[10] which expressly permits suspension of disability benefits before eligibility is finally decided. See *Richardson* v. *Wright*, 405 U. S. 208 (1972). On the other hand, an analogy may be drawn between § 204 and § 303 (a)(1), 42 U. S. C. § 503 (a)(1), which this Court in *California Human Resources Dept.* v. *Java,* 402 U. S. 121 (1971), interpreted to require payment of unemployment benefits pending a final determination of eligibility.[11] Neither § 204 nor § 303 (a)(1) expressly addresses the timing of a hearing, but both speak in mandatory terms and imply that the mandated act—here waiver of recoupment, there payment of benefits—is to precede other action.

## B

The heart of the present dispute concerns not whether a prerecoupment decision should be made, but whether making the decision by regional office review of the written waiver request is sufficient to protect the recipient's right not to be subjected to an improper recoupment.

In this regard, requests for reconsideration under § 204 (a), as to whether overpayment occurred, may be distinguished from requests for waiver of the Secretary's right to recoup

---

[10] Section 225, 42 U. S. C. § 425, provides:

"If the Secretary, on the basis of information obtained by or submitted to him, believes that an individual entitled to [disability benefits] . . . may have ceased to be under a disability, the Secretary may suspend the payment of benefits . . . until it is determined . . . whether or not such individual's disability has ceased or until the Secretary believes that such disability has not ceased."

[11] Section 303 (a) provides:

"The Secretary of Labor shall make no certification for payment to any State unless he finds that the law of such State . . . includes provision for—

"(1) Such methods of administration . . . as are found by the Secretary of Labor to be reasonably calculated to insure full payment of unemployment compensation when due."

under § 204 (b). As the Courts of Appeals in this case and in *Mattern* noted, requests under § 204 (a) for reconsideration involve relatively straightforward matters of computation for which written review is ordinarily an adequate means to correct prior mistakes. *Elliott,* 564 F. 2d, at 1231; *Mattern* v. *Mathews,* 582 F. 2d 248, 255–256 (CA3 1978). Many of the named respondents were found to have been overpaid based on earnings reports they themselves had submitted. But unlike the Court of Appeals in this case, we do not think that the rare instance in which a credibility dispute is relevant to a § 204 (a) claim is sufficient to require the Secretary to sift through all requests for reconsideration and grant a hearing to the few that involve credibility. The statute authorizes only "proper" recoupment, but some leeway for practical administration must be allowed. Nor do the standards of the Due Process Clause, more tolerant than the strict language here in issue, require that prerecoupment oral hearings be afforded in § 204 (a) cases. The nature of a due process hearing is shaped by the "risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exceptions." *Mathews* v. *Eldridge,* 424 U. S., at 344. It would be inconsistent with that principle to require a hearing under § 204 (a) when review of a beneficiary's written submission is an adequate means of resolving all but a few § 204 (a) disputes. *Mattern,* 582 F. 2d, at 258.

By contrast, written review hardly seems sufficient to discharge the Secretary's statutory duty to make an accurate determination of waiver under § 204 (b). Under that subsection, the Secretary must assess the absence of "fault" and determine whether or not recoupment would be "against equity and good conscience." These standards do not apply under § 204 (a). The Court previously has noted that a "broad 'fault' standard is inherently subject to factual determination and adversarial input." *Mitchell* v. *W. T. Grant Co.,* 416 U. S. 600, 617 (1974). As the Secretary's regulations

make clear, "fault" depends on an evaluation of "all pertinent circumstances" including the recipient's "intelligence . . . and physical and mental condition" as well as his good faith. 20 CFR § 404.507 (1978). We do not see how these can be evaluated absent personal contact between the recipient and the person who decides his case. Evaluating fault, like judging detrimental reliance, usually requires an assessment of the recipient's credibility, and written submissions are a particularly inappropriate way to distinguish a genuine hard luck story from a fabricated tall tale. See *Goldberg* v. *Kelly,* 397 U. S., at 269.

The consequences of the injunctions entered by the District Courts confirm the reasonableness of interpreting § 204 (b) to require a prerecoupment oral hearing. In compliance with those orders, the Secretary, beginning with calendar year 1977, has granted what respondents term "a short personal conference with an impartial employee of the Social Security Administration at which time the recipient presents testimony and evidence and cross-examines witnesses, and the administrative employee questions the recipient." Brief for Respondents 46. Of the approximately 2,000 conferences held between January 1977 and October 1978, 30% resulted in a reversal of the Secretary's decision. Brief for Petitioner 46. This rate of reversal confirms the view that, without an oral hearing, the Secretary may misjudge a number of cases that he otherwise would be able to assess properly, and that the hearing requirement imposed by the Court of Appeals significantly furthers the statutory goal that "there shall be no" recoupment when waiver is appropriate. We therefore agree with the Court of Appeals that an opportunity for a prerecoupment oral hearing is required when a recipient requests waiver under § 204 (b).

## IV

Without full consideration of the question, the Court of Appeals expressed doubts about the availability of full relief

under § 205 (g), the Act's judicial review provision. It therefore invoked the extraordinary remedy of mandamus, for which jurisdiction is provided by 28 U. S. C. § 1361. In this Court, the Secretary contends that mandamus is not appropriate. And though he concedes that jurisdiction over the claims of the named plaintiffs was proper under § 205 (g), he argues that class relief is inappropriate under that section. The Secretary contends in the alternative that even if class relief were appropriate, a nationwide class should not have been certified, and, because the classes here include individuals who have not filed for reconsideration or waiver, relief was awarded to persons over whom the courts had no § 205 (g) jurisdiction. The Secretary also contends that injunctive relief cannot be awarded in a § 205 (g) suit. While we do not reject the Secretary's contentions entirely, we find that nothing in § 205 (g) prohibits the prerecoupment hearing relief awarded in this case, and so we do not reach the question whether mandamus would otherwise be available.

A

The Secretary argues that class relief is not available in connection with any action brought under § 205 (g),[12] and therefore that class relief should not have been afforded in this case. In making this argument, the Secretary relies on the language of § 205 (g) which authorizes suit by "[a]ny individual," speaks of judicial review of "any final decision of the Secretary made after a hearing to which [the plaintiff] was a party," and empowers district courts "to enter . . . a judgment affirming, modifying, or reversing the decision of the Secretary." This language, the Secretary says, indicates

---

[12] In pertinent part, § 205 (g), 42 U. S. C. § 405 (g), provides:

"Any individual, after any final decision of the Secretary made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow."

that Congress contemplated a case-by-case adjudication of claims under § 205 (g) that is incompatible with class relief.

The Secretary contends that the decision in *Weinberger* v. *Salfi*, 422 U. S. 749 (1975), finding class relief inappropriate on the facts of that case, and the legislative history of § 205 (g) [13] support his argument in this regard. And though the Secretary concedes that every Court of Appeals that has considered this issue has concluded that class relief is available under § 205 (g),[14] he distinguishes those cases on the grounds they evinced insufficient respect for the statute's plain language and exaggerated the need for class relief in § 205 (g) actions. Restricted judicial review will not have a detrimental effect on the administration of the Social Security Act, the Secretary says, because he will appeal adverse decisions or abide them within the jurisdiction of the courts rendering them. There is thus no need for repetitious litigation in order to establish legal principles beyond the confines of a particular case, and no need to afford class relief in cases brought under § 205 (g).

Section 205 (g) contains no express limitation of class relief. It prescribes that judicial review shall be by the usual type of "civil action" brought routinely in district court in

---

[13] The Secretary, noting the sparseness of the legislative history of the Social Security Act on this issue, points only to language indicating that § 205 (g) was intended to fill a gap in the original Act. Congress indicated that it amended the Act because it did not "specify what remedy, if any, is open to a claimant in the event his claim to benefits is denied by the [Social Security] Board." S. Rep. No. 734, 76th Cong., 1st Sess., 52 (1939). The reference in this passage to "a claimant" and "his claim," the Secretary believes, bolsters his argument that Congress intended only case-by-case adjudication under § 205 (g).

[14] See, *e. g.*, *Caswell* v. *Califano*, 583 F. 2d 9, 14 n. 12 (CA1 1978); *Jones* v. *Califano*, 576 F. 2d 12, 21–22 (CA2 1978); *Liberty Alliance of the Blind* v. *Califano*, 568 F. 2d 333, 344–346 (CA3 1977); *Johnson* v. *Mathews*, 539 F. 2d 1111, 1125–1126 (CA8 1976); *Jimenez* v. *Weinberger*, 523 F. 2d 689, 694–697 (CA7 1975), cert. denied *sub nom. Mathews* v. *Jimenez*, 427 U. S. 912 (1976).

connection with the array of civil litigation. Federal Rule Civ. Proc. 1, in turn, provides that the Rules "govern the procedure in the United States district courts in *all* suits of a civil nature." (Emphasis added.) Those Rules provide for class actions of the type certified in this case. Fed. Rule Civ. Proc. 23 (b)(2). In the absence of a direct expression by Congress of its intent to depart from the usual course of trying "all suits of a civil nature" under the Rules established for that purpose, class relief is appropriate in civil actions brought in federal court, including those seeking to overturn determinations of the departments of the Executive Branch of the Government in cases where judicial review of such determinations is authorized.

We do not find in § 205 (g) the necessary clear expression of congressional intent to exempt actions brought under that statute from the operation of the Federal Rules of Civil Procedure. The fact that the statute speaks in terms of an action brought by "any individual" or that it contemplates case-by-case adjudication does not indicate that the usual Rule providing for class actions is not controlling, where under that Rule certification of a class action otherwise is permissible. Indeed, a wide variety of federal jurisdictional provisions speak in terms of individual plaintiffs, but class relief has never been thought to be unavailable under them. See, *e. g.,* 28 U. S. C. § 1343 (civil rights; provides jurisdiction over civil actions "authorized by law to be commenced by any person"); 28 U. S. C. § 1361 (mandamus; empowers federal courts to compel certain Government officials and agencies "to perform a duty owed to the plaintiff"); 29 U. S. C. § 1132 (a) (Employee Retirement Income Security Act of 1974; provides jurisdiction over a civil action brought under the Act "by a participant or beneficiary"). It is not unusual that § 205 (g), like these other jurisdictional statutes, speaks in terms of an individual plaintiff, since the Rule 23 class-action device was designed to allow an exception to the usual rule that litigation

is conducted by and on behalf of the individual named parties only.

Moreover, class relief is consistent with the need for case-by-case adjudication emphasized by the Secretary, at least so long as the membership of the class is limited to those who meet the requirements of § 205 (g). See *Norton* v. *Mathews*, 427 U. S. 524, 535–537, and nn. 4–8 (1976) (STEVENS, J., dissenting). Where the district court has jurisdiction over the claim of each individual member of the class, Rule 23 provides a procedure by which the court may exercise that jurisdiction over the various individual claims in a single proceeding.

Finally, we note that class relief for claims such as those presented by respondents in this case is peculiarly appropriate. The issues involved are common to the class as a whole. They turn on questions of law applicable in the same manner to each member of the class. The ultimate question is whether a prerecoupment hearing is to be held, and each individual claim has little monetary value. It is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue. And the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every social security beneficiary to be litigated in an economical fashion under Rule 23.

We therefore agree that where the district court has jurisdiction over the claims of the members of the class in accordance with the requirements set out in § 205 (g), it also has the discretion under Fed. Rule Civ. Proc. 23 to certify a class action for the litigation of those claims.

## B

The Secretary next argues that, assuming class actions in fact may be maintained under § 205 (g), it was error for the courts here to sustain the nationwide class in the *Buffington* litigation. He argues that a nationwide class is unwise in that it forecloses reasoned consideration of the same issues by

other federal courts and artificially increases the pressure on the docket of this Court by endowing with national importance issues that, if adjudicated in a narrower context, might not require our immediate attention. Moreover, the Secretary, citing *Dayton Board of Education* v. *Brinkman,* 433 U. S. 406 (1977), as an example, argues that nationwide class relief is inconsistent with the rule that injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.

Nothing in Rule 23, however, limits the geographical scope of a class action that is brought in conformity with that Rule. Since the class here was certified in accordance with Rule 23 (b)(2), the limitations on class size associated with Rule 23 (b)(3) actions do not apply directly. Nor is a nationwide class inconsistent with principles of equity jurisprudence, since the scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class. *Dayton Board,* 433 U. S., at 414–420. If a class action is otherwise proper, and if jurisdiction lies over the claims of the members of the class, the fact that the class is nationwide in scope does not necessarily mean that the relief afforded the plaintiffs will be more burdensome than necessary to redress the complaining parties.

We concede the force of the Secretary's contentions that nationwide class actions may have a detrimental effect by foreclosing adjudication by a number of different courts and judges, and of increasing, in certain cases, the pressures on this Court's docket. It often will be preferable to allow several courts to pass on a given class claim in order to gain the benefit of adjudication by different courts in different factual contexts. For this reason, a federal court when asked to certify a nationwide class should take care to ensure that nationwide relief is indeed appropriate in the case before it, and that certification of such a class would not improperly interfere with the litigation of similar issues in other judicial districts. But we decline to adopt the extreme position that

such a class may never be certified. The certification of a nationwide class, like most issues arising under Rule 23, is committed in the first instance to the discretion of the district court. On the facts of this case we cannot conclude that the District Court in *Buffington* abused that discretion, especially in light of its sensitivity to ongoing litigation of the same issue in other districts, and the determination that counsel was adequate to represent the class.

## C

The Secretary concedes that the named plaintiffs have satisfied the requirements of § 205 (g) jurisdiction.[15] He argues, however, that the District Courts erred in awarding relief to class members who have been subjected to recoupment but who have not sought either reconsideration of overpayment determinations or waiver of recovery. The Secretary contends that these class members have failed to obtain a "final decision" from the Secretary as required by § 205 (g), as construed in *Weinberger* v. *Salfi*, 422 U. S. 749 (1975), and *Mathews* v. *Eldridge*, 424 U. S. 319 (1976).

---

[15] Brief for Petitioner 54–55. There are five named representatives in the *Elliott* class. The District Court found that the notice sent to respondents by the Secretary did not advise them of the need to file a written request, but that even so all had personally been in touch with the local Social Security office within 30 days and objected to recoupment. The court also found that, after suit was initiated, John Vaquilar, Evelyn Elliott, Raymond Gaines, and Nancy Yamasaki filed written requests for reconsideration and waiver, and that these requests would not have changed their status had filing been timely. 371 F. Supp., at 965, and n. 8, 966, and n. 14. The Secretary says that files of the Social Security Administration also show that Jordan Silva filed a request for reconsideration and waiver, which was denied. Brief for Petitioner 12 n. 16. Because Isabelle Ortiz never filed such a request, the Secretary expresses some reservation as to whether she has met the requirements of § 205 (g). Brief for Petitioner 55.

There are two named representatives of the *Buffington* class. Fannie Buffington filed a request for reconsideration, and Frances Biner filed a request for waiver. 564 F. 2d, at 1224–1225.

The relief to which the Secretary objects in this Court is the determination that he must afford class members an opportunity for a prerecoupment oral hearing. With respect to that relief, the classes certified were plainly too broad. Both the *Elliott* and the *Buffington* classes included persons who had not filed requests for reconsideration or waiver in the past and would not do so in the future.[16] As to them, no "final decision" concerning the right to a prerecoupment hearing has been or will be made.

The Secretary errs, however, in suggesting that the lower courts ordered that an opportunity for a prerecoupment oral hearing be afforded to those persons. The Court of Appeals aptly summarized its holding, and that of the District Courts, as being that recipients are entitled to the opportunity for a hearing "when they claim a waiver." 564 F. 2d, at 1222. Because the procedure for claiming waiver involves filing a written request with the Secretary, we cannot agree that the Court of Appeals ordered this relief for those who do not meet the jurisdictional prerequisites of § 205 (g). The Secretary's objection to the class definition is well taken, but it provides no basis for altering the relief actually granted in this case.

D

Finally, the Secretary contends that the District Courts erred in granting injunctive relief. He argues that the grant of jurisdiction found in § 205 (g), which speaks only of the

---

[16] Respondents also sought and obtained a ruling that the Secretary had not provided constitutionally adequate notice. The breadth of the classes is caused in part by the inclusion of all those who had not received adequate notice, a class far larger than the class of those who, after receiving notice, filed a request for reconsideration or waiver with the Secretary. The Secretary does not challenge in this Court the Court of Appeals' ruling as to notice, and none of the parties discuss whether a decision to send notice could be a "final decision" within the meaning of § 205 (g). We therefore decline to consider whether the Court of Appeals had jurisdiction under § 205 (g) to grant notice relief to the class members.

power to enter a judgment "affirming, modifying, or reversing the decision of the Secretary," does not encompass the equitable power to direct that the statute be implemented through procedures other than those authorized by the Secretary. Invoking the maxim that equitable relief is appropriate only when a party has no adequate remedy at law, he says that respondents would have an adequate remedy if a court simply reversed the Secretary's decision not to grant them prerecoupment oral hearings. In the face of such an order, he would be forced, he says, to suspend recoupment until the recipient was afforded a hearing.

The Secretary's reading of the statute is too grudging. Absent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction. See *Porter* v. *Warner Holding Co.*, 328 U. S. 395, 398 (1946); *Scripps-Howard Radio* v. *FCC*, 316 U. S. 4, 9–11 (1942). Nothing in either the language or the legislative history [17] of § 205 (g) indicates that Congress intended to preclude injunctive relief in § 205 (g) suits.

Injunctions can play an essential role in § 205 (g) litigation. Without the power to order a stay of recoupment pending decision, a court for all practical purposes would be unable to "reverse" a decision concerning prerecoupment rights. In class actions, injunctions may be necessary to protect the interests of absent class members and to prevent repetitive litigation. While the grant of injunctive relief makes the Secretary's duty to comply enforceable by contempt order, "[s]urely Congress did not intend § 205 (g) to provide reluctant federal officials with a means of delay in the remote eventuality that they might not feel bound by the judgment of a federal court." *Norton* v. *Mathews*, 427 U. S., at 535 (dissenting opinion). The conclusion that injunctive relief

---

[17] See S. Rep. No. 734, 76th Cong., 1st Sess., 52 (1939); H. R. Rep. No. 728, 76th Cong., 1st Sess., 43 (1939).

is available under § 205 (g) is supported both by our implicit holding that a three-judge court was properly convened in *Jimenez* v. *Weinberger,* 417 U. S. 628 (1974), and by the opinions of four Courts of Appeals.[18]

## V

For these reasons, we hold that recipients who file a written request for waiver under § 204 (b) are entitled to the opportunity for a prerecoupment oral hearing; that those who merely request reconsideration under § 204 (a) are not so entitled; that class certification is permissible under § 205 (g); that the *Buffington* court did not abuse its discretion in certifying a nationwide class; that the class did exceed the bounds permitted by § 205 (g), but that the class members who received relief all satisfied the § 205 (g) requirement that a request for waiver be filed; and that injunctive relief may be awarded in a § 205 (g) proceeding.

The judgment of the Court of Appeals is therefore affirmed in part and reversed in part.

*It is so ordered.*

MR. JUSTICE POWELL took no part in the consideration or decision of this case.

---

[18] See *Caswell* v. *Califano,* 583 F. 2d, at 14 n. 12; *In re Letourneau,* 559 F. 2d 892, 894 (CA2 1977); *Johnson* v. *Mathews,* 539 F. 2d, at 1125–1126; *Jimenez* v. *Weinberger,* 523 F. 2d, at 694–697. See generally *Weinberger* v. *Salfi,* 422 U. S. 749, 763 n. 8 (1975), noting this issue.