Patrick BELLO

v.

POWER TEST CORPORATION.

Civ. A. No. 81–1936.

United States District Court,
E.D. Pennsylvania.

July 30, 1982.

## MEMORANDUM

CAHN, District Judge.

Plaintiff, Patrick Bello, operates a Power Test gasoline service station. Defendant, Power Test Corporation, is a reseller of gasoline.[1] It resells gasoline to gasoline service stations operating under the brand name Power Test. Plaintiff instituted this action to recover treble damages for defendant's alleged overcharges in the sale of gasoline in violation of § 210 of the Economic Stabilization Act of 1970, 12 U.S.C. § 1904 note ("Act") and the regulations promulgated thereunder.

Before me is plaintiff's motion for class certification. Plaintiff seeks to represent a class defined as:

> All service station retail dealers who, during the period of April 1, 1979 through December 31, 1979, directly purchased gasoline from Defendant Power Test (including its wholly-owned subsidiaries) at prices in excess of those which Power Test could lawfully charge.

---

1. " 'Reseller' means a firm (other than a refiner or retailer) or that part of such firm which carries on the trade or business of purchasing covered products, and reselling them without substantially changing their form to purchasers other than ultimate consumers." 10 C.F.R. 212.31 (1980). Gasoline is a covered product. *Id.*

For the following reasons plaintiff's motion will be denied.

In 1973, the Cost of Living Council promulgated Mandatory Petroleum Price Regulations pursuant to § 210 of the Act that limited the price at which resellers could sell certain petroleum products. 10 C.F.R. Part 212 (1980).[2] Gasoline sold to service stations which is ultimately resold to consumers is covered by the act. 10 C.F.R. 212.31 (1980).

Plaintiff alleges that beginning at least as early as April 1, 1979 and continuing through December 31, 1979, defendant "willfully or otherwise" sold its gasoline to plaintiff and other service station operators at prices in excess of those permitted by the regulations.[3] See 10 C.F.R. § 212.93 (1980). Defendant's alleged overcharges exceed .$6,000,000. Although plaintiff wrote defendant's president for a refund of all overcharges,[4] defendant has not made restitution to plaintiff nor has defendant offered to make restitution to plaintiff.

## I. NONWILLFUL VIOLATIONS OF THE ACT

Plaintiff alleges that defendant "willfully or otherwise" overcharged plaintiff and members of the proposed class. This characterization of defendant's behavior as "willful or otherwise" is important

because I believe class actions for nonwillful violations of the Act are circumscribed by § 210(b) of the Act. Section § 210(b) states:

[W]here the overcharge is not willful ... no action for an overcharge may be brought by or on behalf of any person unless such person has first presented to the seller ... a bona fide claim for refund of the overcharge and has not received repayment of such overcharge within ninety days....

Section 210(b) has two possible interpretations. The interpretation espoused by defendant, which I believe is more convincing, is that § 210(b) requires every person seeking relief for nonwillful violations of the Act to personally make a claim for refund. Under this view a class action can be brought only on behalf of persons who have made such claims.[5] Plaintiff, however, argues that as long as the class representative asks for a refund on behalf of all aggrieved persons, he can bring a treble damages action on their behalf—assuming the requirements of Fed.R.Civ.P. 23 are met—even if they have not personally filed claims for refunds.[6]

The legislative history of § 210(b) contains evidence, albeit somewhat sparse, that Congress intended to foreclose class actions

---

**2.** The regulations, applicable to distributors like · defendant, no longer have any force and effect as a result of President Reagan's Executive Order exempting crude oil and gasoline from federal price and allocation regulations as of January 28, 1981. Executive Order No. 12287, 46 Fed.Reg. 9909 (January 30, 1981).

**3.** The United States Department of Energy ("Department") issued a Notice of Probable Violation (NOPV) to a subsidiary of defendant some time before this suit was filed. The Department alleged violations of the Mandatory Petroleum Price Regulations during the period April 1, 1979 to December 31, 1979, in the amount of $6,666,877. Defendant has appealed the NOPV within the Department.

Defendant filed a motion to dismiss this action on the ground that a final decision by the Department will provide me with some guidance in interpreting the complex regulations involved in this case. That motion has been taken under advisement.

**4.** See note 6 infra.

**5.** The complaint is devoid of allegations that members of the proposed class asked defendant for refunds.

**6.** On May 7, 1981 plaintiff wrote to defendant's president:

This is a notice that the undersigned counsel, on behalf of Patrick Bello and all others who operated service stations selling Powertest-brand gasoline, hereby request refund of all overcharges imposed by your company and collected from my client and the others he seeks to represent during the period April 1, 1979 through December 31, 1979.

Defendant questions whether the letter constitutes a "bona fide claim for refund" for plaintiff, much less a claim for his proposed class. Rather than address that issue now, I will assume, for purposes of plaintiff's class action certification motion, that plaintiff has, at the very least, presented defendant with a "bona fide claim for refund" for himself.

when violations of the Act were nonwillful, unless each class member presented a "bona fide claim for refund". The Act as originally drafted did not contain a claim requirement. In criticizing the lack of a claim requirement, at least for nonwillful violations of the Act, Senator Inouye had this to say:

[C]onsidering the temporary nature of the Economic Stabilization Act and the confusion naturally surrounding an operation that attempts to control the entire economy with a board and a commission, the invitation to misunderstanding is substantial. The encouragement given to litigation in section 210 in this type situation seems overly harsh. Indeed, the class actions may be filed by one purchaser even if only one purchaser is misled. When this is multiplied by the hundreds of thousands of products handled by retailers and the millions of customer transactions, the penalties and costs—whether claims are justified or not—are totally unwarranted and unreasonable.

117 Cong.Rec. 43712 (1971). In introducing the amendment to the Act which became § 210(b) Senator Inouye said:

The proposed amendment would require a purchaser to present his claim of overcharge to a seller before filing suit. With the amendment, there would at least be some restraint against immediate massive litigation by dollar-hungry attorneys who stand to benefit greatly by having litigation pursued rather than by having overcharges promptly repaid. The amendment would substantially reduce the amount of litigation without affecting the ability of persons to recover their overcharges or the enforcement of the price control regulations.

The proposed amendment provides a modicum of responsibility and restraint. 117 Cong.Rec. 43712 (1971). These remarks suggest that because the price regulations are enormously complex, Congress felt nonwillful violators should be given the opportunity to make restitution without first incurring massive litigation costs. This preference for conciliation is furthered only by requiring every aggrieved person to make a "bona fide claim for refund". Therefore, I conclude that a class action cannot be brought for nonwillful violations of the Act unless each member of the proposed class files a bona fide claim for refund with the alleged violator.[7]

## II. WILLFUL VIOLATIONS OF THE ACT

 To the extent this action was brought to rectify willful violations of the Act, defendant opposes class certification on the ground that this action does not comply with the requirements of Fed.R.Civ.P. 23.

### A.

Subsection (a) of Fed.R.Civ.P. 23 provides as follows:

One or more members of a class action may sue or be sued, as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

---

7. In *Califano v. Yamasaki,* 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), the Supreme Court said that class relief is appropriate in all civil actions, assuming the requirements of Fed. R.Civ.P. 23 are met, unless in a particular type of action there is a "clear expression of congressional intent to exempt actions brought under [a] statute from the operation of the Federal Rules of Civil Procedure." *Id.* at 700, 99 S.Ct. at 2557. Although plaintiff would have me believe otherwise, *Califano* does not require the expression of intent to appear on the face of the statute. While the statutory language in this case is ambiguous, I believe the legislative history evinces a clear expression of congressional intent to preclude class actions unless all members of the proposed class make a "bona fide claim for refund". (Compare the legislative history relied on by plaintiff in the *Califano* case, 442 U.S. at 699 n. 13, 99 S.Ct. at 2556 n. 13 with the legislative history underlying § 210[b] ).

Defendant does not dispute that the requirements of numerosity[8] and commonality[9] found in the rule are satisfied. Defendant argues that plaintiff's claims are not typical of the claims of the class and that plaintiff is an inadequate class representative.

### 1.

Defendant relies on four grounds in arguing that plaintiff's claim does not satisfy the typicality requirement found in subsection (a)(3) of the rule. First, defendant urges plaintiff's testimony in another case contradicts the averments he made in the complaint in this case. While the complaint says members of the purported class did not find out about the alleged overcharges until 1981, plaintiff's prior testimony—according to defendant's characterization—suggests he suspected overcharges as early as May, 1980. On the state of the record I cannot evaluate this argument, but even if I could I do not see its relevance. If defendant is trying to say that plaintiff knew about the overcharges before members of the proposed class knew about them, I do not see how that bears on the typicality of plaintiff's claim when the central issue in the case is whether defendant overcharged its customers, not when its customers discovered the overcharges.

Second, defendant says plaintiff's claim lacks typicality because it was previously raised as a counterclaim in an action brought by a subsidiary of defendant against plaintiff for unpaid gasoline. That action went to arbitration and was eventually dismissed without prejudice. Since no final decision on the merits of plaintiff's counterclaim was ever made, I do not believe the fact of a prior action strips plaintiff's claim of typicality.[10]

Third, defendant says it has a possible counterclaim to plaintiff's claim because plaintiff allegedly admitted that he commingled gasoline purchased from sources other than defendant, in violation of federal and state laws. This counterclaim is not before me at the present time. Even if it were, it would not affect the typicality of plaintiff's claim because it is an issue relevant to the merits of the case and not to the class action motion. *Sley v. Jamaica Water & Utils., Inc.,* 77 F.R.D. 391, 395 (E.D.Pa. 1977).

Fourth, defendant says plaintiff may have improperly induced an assignment of his lease to the Power Test station to another entity without defendant's permission. This seems to be an issue unrelated to the central issue in the case. If I find that plaintiff was not the injured party, a substitute could be found for him.

### 2.

In support of defendant's argument that plaintiff is not an adequate class representative within the meaning of subsection (a)(4) of the rule defendant again raises the commingling of gasoline issue. If, in fact, plaintiff admitted under oath that he commingled gasoline, in violation of federal and state laws, I might conclude that plaintiff is an inadequate representative. A class representative holds a position of trust and I would be reluctant to put the fate of others in the hands of someone of questionable integrity. *See Cobb v. Avon Prods., Inc.,* 71 F.R.D. 652, 655 (W.D.Pa.1976), *appeal dismissed,* 565 F.2d 151 (3d Cir.1977). Nevertheless, defendant has presented no concrete evidence to support this argument.

In addition, defendant argues that plaintiff's financial position is too weak to cover the expenses attendant to class action litigation. I believe I cannot close the courthouse door to plaintiff because his net worth is estimated at $40,000. Plaintiff's

---

**8.** Plaintiff estimates there may be hundreds of class members. Plaintiff need not allege an exact number to obtain class certification. *Hedges Enterprises, Inc. v. Continental Group, Inc.,* 81 F.R.D. 461, 464–65 (E.D.Pa.1979).

**9.** For example, I must determine how the regulations define the maximum price at which defendant can sell gasoline to service stations.

**10.** A prior arbitration on the merits, however, may affect the typicality of a class representative's claim. *McClain v. Mack Trucks, Inc.,* 81 F.R.D. 730, 733 (E.D.Pa.1979).

counsel are experienced and reputable attorneys who would not undertake the representation of a class unless they could do so zealously.

### B.

Although I believe plaintiff satisfies the requirements of Fed.R.Civ.P. 23(a), he must also convince me that this action satisfies one of the subsections of Fed.R.Civ.P. 23(b). Plaintiff says this action satisfies the requirements of subsection (3). I disagree.

Fed.R.Civ.P. 23(b)(3) has two distinct requirements: First, the questions of law and fact common to the members of the class must predominate over any questions affecting only individual members; and, second, a class action must be superior to other available methods for the fair and efficient adjudication of the controversy.

To prove liability in this case, plaintiff would have to establish defendant's maximum selling price and then the price charged members of the proposed class. One component of maximum selling price is increased product costs. 10 C.F.R. § 212.-93(a) (1980). Determining increased product costs is a common question because I need only refer to defendant's business; increased product costs are unaffected by the characteristics of defendant's customers. Nevertheless, common questions do not predominate in this case. For example, maximum selling price differs by "class of purchaser". 10 C.F.R. § 212.93 (1980). Therefore, each member of the proposed class would have to establish the class to which he belongs. Furthermore, each sale to each member of the proposed class must be established to determine whether defendant exceeded the maximum selling price. Temporary voluntary allowances and rebates must be considered for each transaction.

In addition, plaintiff has not demonstrated that a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages sustained, if any, by each member of the proposed class would have to be established through an analysis of thousands of invoices. Proof of damage, therefore,

would be made unnecessarily complex by certifying a class in this action.