Wilhelmina POPE et al., Appellants

v.

The RAILROAD RETIREMENT
BOARD et al.

Edwin THRASH et al., Appellants

v.

The RAILROAD RETIREMENT
BOARD et al.

Nos. 83–1305, 83–1422.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 7, 1983.

Decided Oct. 2, 1984.

Gill Deford, Los Angeles, Cal., with whom Neal S. Dudovitz, Los Angeles, Cal., Jan May, Burton D. Fretz, and Toby S. Edelman, Washington, D.C., were on the brief, for appellants.

Nathan Dodell, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, Royce C. Lamberth, R.

Craig Lawrence, and Michael J. Ryan, Asst. U.S. Attys., Washington, D.C., and Arthur A. Arfa, Atty., Railroad Retirement Board, Chicago, Ill., were on the brief, for appellees.

Before WRIGHT and TAMM, Circuit Judges, and SWYGERT,* Senior Circuit Judge.

Opinion PER CURIAM.

PER CURIAM.

The issue is whether the district court erred in denying attorney fees and costs to plaintiffs-appellants under the Equal Access to Justice Act, 28 U.S.C. § 2412(d). Plaintiffs' request for an allowance of these items grows out of a lawsuit relating to the notice procedures used by the United States Railroad Retirement Board in its recoupment of alleged excess payments of annuities pursuant to the Railroad Retirement Act of 1974, 45 U.S.C. §§ 231 *et seq.* The essential facts underlying the present dispute are recited in our decision on the merits of the litigation. *Pope v. U.S. Railroad Retirement Board,* and *Thrash v. U.S. Railroad Retirement Board,* 672 F.2d 972 (D.C.Cir.1982). We see no need to repeat them.

The procedural history of the litigation starts with the filing of a complaint in the United States District Court for the District of Columbia on December 21, 1977 by Wilhelmina Pope and Edward Williams as named plaintiffs in a class action against the Railroad Retirement Board. Plaintiffs and members of their class are annuitants under the Act who received alleged overpayments of annuities and who had their monthly benefits reduced so that the Annuity Fund established under the Act could be reimbursed. Their complaint alleged that the Board had denied them their statutory and constitutional rights by failing to notify them of available procedures whereby they might contest their overpayment determinations or request a waiver of recoupment.[1]

In February 1978 plaintiff-appellants Thrash, McCullough, Colleen Childs, and Darlene Childs filed a similar action in the federal district court, and the two cases were consolidated.

The course of the litigation is generally described by Judge Nichols in our previous decision. During pendency of the suit the Board, as Judge Nichols relates, revised its notice procedures on three occasions (April 5, 1978, November 14, 1978, and October 15, 1979). The November 15, 1979 revision followed the decision in *Califano v. Yamasaki,* 442 U.S. 682 (1979). The revision did not, however, provide for notice to those persons who were subject to recoupment prior to the effective date of the 1979 regulations of their right to an oral hearing. The district court upheld the Board and an appeal to this court followed. We reversed the district court's order and remanded with directions to certify the class and to require the Board to notify all annuitants subject to recoupment of their right to request an oral hearing on disputed overpayments and denials of waiver.

---

* Of the Seventh Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d) (1982).

1. The Act, 45 U.S.C. § 231i, authorizes the Board to recover the amounts of erroneous payments made under the Act in cases where an annuitant has received more than the correct amount of benefits or where an annuitant who is not entitled to benefits receives payments. Section 231i(c) provides that there shall be no recovery of the erroneous overpayment to an annuitant if, in the judgment of the Board, the annuitant was without fault in connection with the erroneous overpayment and "recovery would be contrary to the purpose of [the Act] or would be against equity or good conscience." In other words, the Board may under certain circumstances waive its right to recoup overpayment of benefits.

Although waiver consideration was an integral aspect of the adjudication process on overpayment of claims, the Board initially did not notify erroneously overpaid annuitants of the waiver provisions. These provisions also gave the annuitant the right to appeal a denial of waiver to the Board's Bureau of Hearings and Appeals with the opportunity to be heard orally at an evidentiary hearing. An adverse ruling by the Bureau may be appealed to the Board and then reviewed by a United States court of appeals. 45 U.S.C. § 231g; 20 C.F.R. §§ 260.2, 260.4 (June 8, 1977).

Upon remand the parties settled the form of the notice and, pursuant to their stipulation, the district court signed a final order on August 2, 1982 which certified the class and required the Board to send the approved notice to the class members. Thereafter plaintiffs filed their application for attorney fees (with supporting affidavits) in the amount of $28,033.75 and $569.12 for costs. On February 9, 1983 the district court denied the application; plaintiffs have appealed.

 That plaintiffs are the prevailing parties is undisputed. Therefore unless the United States has met its burden to show that its position was substantially justified, plaintiffs are entitled to recover their attorney fees and the costs of the litigation.[2] Under our recent holding in *Spencer v. NLRB*, 712 F.2d 539 (D.C.Cir. 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984), the phrase "the position of the United States" as used in the Equal Access to Justice Act means "the arguments relied upon by the government in litigation." *Spencer, supra,* 712 F.2d at 557. We then commented in part:

> In actions brought *by* the United States, the governmental action that precipitates the controversy almost invariably *is* its litigation position. Most suits brought *against* the United States entail a similar correspondence. In the usual case, the government acts in a particular fashion and then defends its conduct before an administrative agency and/or a court. Under such circumstances, the litigation position of the United States will almost always be that its underlying action was legally justifiable.

*Id.* at 551–52 (emphasis in original). In deciding whether the district court abused

its discretion in denying attorney fees to these plaintiffs, *Spencer* requires us to look to the litigation stance of the Board.[3] However, what we observed in *Spencer* holds true in this case; the Board's litigation position paralleled its underlying action.

In contending that its position was substantially justified, the Board argues that it voluntarily took various remedial steps to improve its procedures. With the exception of the notice requirement compelled by the mandate of this court, it is true that the Board's actions were not the result of a court order. On the other hand, except for the initial notice procedure prescribed by the Board two days before this suit was filed, the other revisions, made in April 1978, November 1978, and October 1979, were promulgated while this suit was pending. An inference is warranted that the threat of judicial compulsion had a coercive effect on the Board's self-styled voluntary actions.

A further inference is warranted. The Board's actions taken during the pendency of the litigation were tacit admissions by the Board that its notice procedures were inadequate. Thus, the litigation behavior of the Board was less than reasonable, particularly when its piecemeal, remedial action is considered.

To say that its grudging reluctance to grant full procedural rights to the annuitants was substantially justified is a mischaracterization. That such reluctance and dilatory tactics on the part of the Board had an adverse effect on the annuitants was commented upon by this court in its earlier opinion:

> justified or that special circumstances make an award unjust.

**2.** 28 U.S.C. § 2412(d)(1)(A) provides:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to [§ 2412(a)], incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially

**3.** Although "abuse of discretion" is the proper standard of appellate review in the grant or denial of attorney fees under the Equal Access to Justice Act, *Spencer, supra,* 712 F.2d at 565, factual findings by the trial court derived from evidence submitted by the government are reviewable only if "clearly erroneous." *Spencer, supra,* 712 F.2d at 564.

Moreover, appellants and other annuitants who have been subject to recoupment since this suit began have continued to have their monthly annuities reduced during the pendency of this case, and this situation will continue unless relief is granted. The agency would be unjustly enriched and the injustice is enhanced by the extent that the period in which the wrongful action was originally taken continued after the agency, by the filing of this suit, was on notice that the propriety of its procedures was under challenge. We believe the district court erred in not taking steps to prevent this from happening, supposing that the delay in adjudicating the suit was of itself warranted.

*Pope v. Railroad Retirement Board,* 672 F.2d 972, 975 (D.C.Cir.1982).

█ In sum the impression is gained from the history of this litigation that the Board was consistently "dragging its feet" in providing the full panoply of notice procedures that due process and the statute required.

## II

█ The Board also contends that no fees were proper for work performed before October 1, 1981. Its basis for the contention is sovereign immunity. Its position is untenable. The Equal Access to Justice Act expressly provides that it applies to all cases pending on October 1, 1981, the effective date of the legislation. There can be no doubt that Congress waived any sovereign immunity in the grant of attorney fees for all cases pending on October 1, 1981 regardless of whether work on such cases was performed prior to or after that date. As the district court in *Wolverton v. Schweiker,* 533 F.Supp. 420, 423 (D.Idaho 1982), said on the point:

Congress limited the applicability of the EAJA to cases *pending* on October 1, 1981. If it had intended to further narrow the number of applicable cases in this "pending" status, it could have done so by restricting potential cost and fee

awards to those incurred after the Act's effective date. (Emphasis in original.)

The Board has raised no question about the amount of fees asked for by the plaintiffs. Therefore they are entitled to the award which they have requested together with an additional award for legal services rendered in this appeal.

The judgment of the district court is reversed and the case is remanded for further action consistent with this opinion.