KLEINFELD, Circuit Judge,
dissenting:
I respectfully dissent. Class action certification violates the Rule 23 class action certification criteria and deprives Wal-Mart of due process of law.
Class actions need special justification because they are “an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.”[1] They are designed largely to solve an attorneys’ fees problem. “The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone’s (usually an attorney’s) labor.”[2] That need does not pertain here, because the substantial value of sex discrimination claims, the availability of lawyers on contingent fee, and statutory attorney’s fees awards[3] “eliminate financial barriers that might make individual lawsuits unlikely or infeasible.”[4]
While a class action can have the virtue of assuring equal justice to all class members, it can also have the vice of binding them to something less than justice. This case poses a considerable risk of enriching undeserving class members and counsel, but depriving thousands of women actually injured by sex discrimination of their just due. Under Rule 23, the judgment “shall include” all class members, “whether or not favorable to the class.”[5] That means that if the class loses, all the women pres *1245 ently or formerly employed by Wal-Mart lose.
A lawyer representing a class is in practical effect a lawyer without a client who can make the lawyer serve the client’s interest. A settlement serving the lawyer’s interests may disserve the interests of the class. These lawyers without clients must obtain judicial approval of a settlement, but often that works poorly, because a class action settlement is “a bargain proffered for its approval without benefit of adversarial investigation.”[6] The class action device also threatens unfairness to the defendant. A lawsuit, like surgery, cannot be risk-free. Defendants are ordinarily wise to settle for an amount equal to the risk of losing multiplied by the potential loss. When the potential loss is stratospheric, a rational defendant will settle even the most unjust claim.
Class actions have four “threshold requirements”: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.[7] While Rule 23 does not authorize courts considering class certification to evaluate the merits of a plaintiffs underlying claim,[8] it does require “rigorous analysis” to ensure “actual, not presumed, conformance” with the criteria for class certification.[9] As the Supreme Court recognized in Falcon, “the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiffs cause of action.” [10] Accordingly, as the Second Circuit recently held in In re IPO, a district judge considering class certification must make a “definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues” and “must receive enough evidence, by affidavits, documents or testimony, to be satisfied that each Rule 23 requirement has been met.”[11] The relevance of a commonality depends on the proposition at issue. “All men are mortal” answers the question whether Socrates is mortal, but not who won the World Series. This class has numerosity to spare — 1.5 million women — but none of the other three requirements.
This class lacks “commonality” because there are no “questions of law or fact common to the class.”[12] The only common question Plaintiffs identify with any precision is whether Wal-Mart’s promotion criteria are “excessively subjective.” That is not a commonality with any clear relationship to sex discrimination in pay, promotions, or terminations. Plaintiffs’ sociologist claims subjectivity makes the criteria “vulnerable” to sex discrimination. But the Supreme Court has already held that “leaving promotion decisions to the unchecked discretion of lower level supervisors should itself raise no inference of discriminatory conduct”[13] because it is *1246 “self-evident” that standardized testing cannot sort out who ought to be a manager.[14] “Vulnerability” to sex discrimination is not sex discrimination.
Plaintiffs’ only evidence of sex discrimination is that around 2/3 of Wal-Mart employees are female, but only about 1/3 of its managers are female. But as the Supreme Court recognized in Watson, “It is entirely unrealistic to assume that unlawful discrimination is the sole cause of people failing to gravitate to jobs and employers in accord with the laws of chance.”[15] Not everybody wants to be a Wal-Mart manager. Those women who want to be managers may find better opportunities elsewhere. Plaintiffs’ statistics do not purport to compare women who want to be managers at Wal-Mart with men who want to be managers at Wal-Mart, just female and male employees, whether they want management jobs or not.
This class lacks “typicality” because “the claims or defenses of the representative parties” are not “typical of the claims or defenses of the class.” [16] Plaintiffs must show “the existence of a class of persons who have suffered the same injury” as themselves.[17] There are seven named plaintiffs, from different stores.[18] Here they are, with the gist of the claims they make in the complaint:
Betty Dukes African American female promoted to manager, then demoted in retaliation for discrimination complaints. Did not apply for several slots filled by African American females, African American males, Hispanic female, Filipino male, and Caucasian male because she was discouraged by discrimination against women.
Patricia Surgeson Sexually harassed, replaced by a male who got a better title and more money, denied management opportunities, quit.
Cleo Page Quickly promoted to manager, but denied a department manager position after being told it’s “a man’s world.” A “Caucasian female” got the department manager position. Page later got a different department manager position. But a “Caucasian male,” a “Latina,” and a “Caucasian female” got other management positions she sought and she got paid less than a “Caucasian male” with less seniority-
Chris Kwapnoski Sought management positions given to less qualified men. Manager made sexist remarks.
Deborah Gunter Sought management positions given to less experienced males. Males she trained were promoted instead of her. Never got a management position. Fired after complaining about discrimination and a reduction in her hours.
*1247 Karen Williamson Sought management position but never promoted, even though “qualified.” Males got promotions that were not posted.
Edith Arana African-American woman. Sought management position but never promoted. Store manager told her he “did not want women.” Fired after “falsely accused of ‘stealing time’ ” in retaliation for her discrimination complaints.
“Typicality” exists only if these claims or defenses are “typical of the claims or defenses of the class.”[19] They are not. Some plaintiffs work at Wal-Mart, some do not. Some were promoted to management, some were not. Some claim sex discrimination, some claim mixed motive race and sex discrimination, some appear to claim race discrimination, some claim retaliation, and some appear to claim unfairness but not discrimination. Some plead a prima facie case, some do not. Some are vulnerable to defenses like misconduct, some are not. They worked at different stores and complain of different actions taken by different managers. Whatever the “vulnerability” to sex discrimination of the “corporate culture” of this national corporation with no centralized system for promotion, the various Plaintiffs’ claims and Wal-Mart’s defenses against them do not resemble one another.
Whether these seven named plaintiffs “will fairly and adequately protect the interests of the class,”[20] gets no serious attention, no doubt because everyone assumes that the lawyers will manage the case without much interference from their supposed clients. But if the named plaintiffs were really zealously represented, as they are entitled to be, their interests would diverge and require separate counsel. Women who still work at Wal-Mart have an interest in the terms of an injunction. But an injunction or declaratory judgment cannot benefit women who have quit or been fired and do not want to return. Those who are managers have interests different from those who have not been promoted. Those who face defenses, such as whether they were fired for stealing time, may have a greater interest in a compromise settlement than those whose records are unblemished. None of these plaintiffs adequately represent women at Wal-Mart who have been repeatedly promoted and are company favorites at high levels. Those women have an interest in broad management discretion in order to maximize company success and avoid burdening high performing women with the stigma of being dangerous to the company.
This class was certified under Rule 23(b)(2), which requires that declaratory and injunctive relief “predominate.” But these forms of relief cannot even benefit class members who no longer work for Wal-Mart and have no intention of returning, let alone “predominate.” Those class members lack standing to sue for declaratory and injunctive relief. They are like the summer temporary employee who sued after leaving her state job in Arizonans for Official English v. Arizona.[21]
Although we accorded her standing, the same mistake we make here,[22]- the Supreme Court unanimously disagreed.
*1248 The majority argues that former employees have standing to seek injunctive relief because “it is reasonable that plaintiffs who feel that their rights have been violated by an employers behavior would want that behavior, and the injustice it perpetuates, to end.”[23] No doubt. And no doubt many people, some of whom have never set foot in a Wal-Mart, as an employee or even a customer, also feel that unjust behavior ought to end. But “the psychological consequence presumably produced by observation of conduct with which one disagrees ... is not an injury sufficient to confer standing under Art. III.”[24]
It is hard to say that injunctive and declaratory relief “pre-dominate” even for those still employed who might benefit from an injunction, when they seek billions of dollars in punitive damages. Maybe that kind of money is “incidental” to those not paying it or getting it, but to most people billions of dollars would indeed “predominate.” What non-management employee would care much about how the district court told Wal-Mart to run its personnel system after getting enough cash to quit?
The punitive damages claim poses a constitutional barrier to class certification. The district court devised a scheme under which an “expert or special master” using an unspecified formula will allocate back and front pay to the class members.[25] Plaintiffs waive other consequential compensatory damages. But before the “expert or special master” allocates pay, the jury will decide upon a lump sum amount of punitive damages. The special master will then decide on a formula to divide up all the money. There will never be an adjudication, by the jury or the special master, of whether any individual woman was injured by sex discrimination.
The scheme the majority approves cannot satisfy due process, because (1) there will never be an adjudication of compensatory damages, and (2) the allocation of back and front pay will follow the jury determination of punitive damages. As the Supreme Court held in State Farm, “few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.”[26] “Thus, punitive damages must be determined after proof of liability to individual plaintiffs at the second stage of a pattern or practice case, not upon the mere finding of general liability to the class at the first stage.”[27]
The Civil Rights Act of 1991, and the Due Process Clause, require more individual justice than Wal-Mart will receive. “[I]n a multi-plaintiff, multi-defendant action, an approach that compares each plaintiffs individual compensatory damages with the punitive damages awards against each defendant more accurately reflects the true relationship between the harm for which a particular defendant is responsible, and the punitive damages assessed against that defendant.”[28] The *1249 Civil Rights Act expressly prohibits orders requiring the reinstatement, promotion, or payment of back pay to anyone injured “for any reason other than discrimination.” [29] The district court’s class certification scheme requires what the Civil Rights Act prohibits, the district court having decided “that this ‘rough justice’ is better than the alternative of no remedy at all for any class member.”[30]
The district court calls this class certification “historic,”[31] a euphemism for “unprecedented.” In the law, the absence of precedent is no recommendation. This class certification violates the requirements of Rule 23. It threatens the rights of women injured by sex discrimination. And it threatens Wal-Mart’s rights. The district court’s formula approach to dividing up punitive damages and back pay means that women injured by sex discrimination will have to share any recovery with women who were not. Women who were fired or not promoted for good reasons will take money from Wal-Mart they do not deserve, and get reinstated or promoted as well. This is “rough justice” indeed. “Rough,” anyway. Since when were the district courts converted into administrative agencies and empowered to ignore individual justice?

. Califano v. Yamasaki, 442 U.S. 682, 700-701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979).

. Amchem Prods, v. Windsor, 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (1997)).

. 42 U.S.C. § 2000e-5(k).

. Allison v. Citgo Petroleum Corp., 151 F.3d 402, 420 (5th Cir.1998).

. Fed.R.Civ.P. 23(c)(3).

. Amchem Products, Inc. v. Windsor, 521 U.S. 591, 621, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (affirming denial of class certification for purpose of asbestos claims settlement).

. Amchem Products, Inc. v. Windsor, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); Staton v. Boeing Co., 327 F.3d 938, 953 (9th Cir.2003).

. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

. General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147, 160-61, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

. General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147, 160, 102 S.Ct 2364, 72 L.Ed.2d 740 (1982) (internal quotation marks omitted).

. Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.), 471 F.3d 24, 51-52 (2d Cir.2006).

. Fed.R.Civ.P. 23(a)(2).

. Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 990, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988).

. Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 999, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988).

. Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 992, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988).

. Fed.R.Civ.P. 23(a)(3). Amchem Products, Inc. v. Windsor, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

. Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 157, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

. I do not know why the district court and the majority say there are six.

. Fed.R.Civ.P. 23(a)(3). Amchem Products, Inc. v. Windsor, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

. Fed.R.Civ.P. 23(b)(4).

. Arizonans for Official English v. Ariz., 520 U.S. 43, 67, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997).

. Yniguez v. Arizona, 939 F.2d 727, 734 (9th Cir.1991).

. Maj. at 1235.

. Valley Forge Christian College v. Americans United for Separation of Church & State, 454 U.S. 464, 485, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

. Dukes v. Wal-Mart Stores, Inc., 222 F.R.D. 137, 180 (D.Cal.2004).

. State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). See also Bains LLC v. Arco Prods. Co., 405 F.3d 764, 777 (9th Cir.2005) and Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1044 (9th Cir.2003) (holding 7 to 1 ratio constitutional in discrimination case).

. Allison v. Citgo Petroleum Corp., 151 F.3d 402, 417-18 (5th Cir.1998) (internal citation omitted).

. Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coalition of Life Activists, 422 F.3d 949, 961 (9th Cir.2005).

. 42 U.S.C. § 2000e-5(g)(2)(A).

. Dukes v. Wal-Mart Stores, Inc., 222 F.R.D. 137, 177 (D.Cal.2004).

. Dukes v. Wal-Mart Stores, Inc., 222 F.R.D. 137, 142 (D.Cal.2004).