Justice Ginsburg,
with whom Justice Breyer, Justice Sotomayor, and Justice Kagan join,
concurring in part and dissenting in part.
The class in this case, I agree with the Court, should not have been certified under Federal Rule of Civil Procedure 23(b)(2). The plaintiffs, alleging discrimination in violation *368 of Title VII, 42 U. S. C. § 2000e et seq., seek monetary relief that is not merely incidental to any injunctive or declaratory relief that might be available. See ante, at 360-367. A putative class of this type may be certifiable under Rule 23(b)(3), if the plaintiffs show that common class questions “predominate” over issues affecting individuals — e. g., qualification for, and the amount of, backpay or compensatory damages — and that a class action is “superior” to other modes of adjudication.
Whether the class the plaintiffs describe meets the specific requirements of Rule 23(b)(3) is not before the Court, and I would reserve that matter for consideration and decision on remand.[1] The Court, however, disqualifies the class at the starting gate, holding that the plaintiffs cannot cross the “commonality” line set by Rule 23(a)(2). In so ruling, the Court imports into the Rule 23(a) determination concerns properly addressed in a Rule 23(b)(3) assessment.
I — I
<J
Rule 23(a)(2) establishes a preliminary requirement for maintaining a class action: “[T]here are questions of law or fact common to the class.” [2] The Rule “does not require that all questions of law or fact raised in the litigation be com *369 mon,” 1 H. Newberg & A. Conte, Newberg on Class Actions §3.10, pp. 3-48 to 3-49 (3d ed. 1992); indeed, “[e]ven a single question of law or fact common to the members of the class will satisfy the commonality requirement,” Nagareda, The Preexistence Principle and the Structure of the Class Action, 103 Colum. L. Rev. 149, 176, n. 110 (2003). See Advisory Committee’s 1937 Notes on Fed. Rule Civ. Proc. 23, 28 U. S. C. App., p. 138 (citing with approval cases in which “there was only a question of law or fact common to” the class members).
A “question” is ordinarily understood to be “[a] subject or point open to controversy.” American Heritage Dictionary 1483 (3d ed. 1992). See also Black’s Law Dictionary 1366 (9th ed. 2009) (defining “question of fact” as “[a] disputed issue to be resolved . . . [at] trial” and “question of law” as “[a]n issue to be decided by the judge”). Thus, a “question” “common to the class” must be a dispute, either of fact or of law, the resolution of which will advance the determination of the class members’ claims.[3]
B
The District Court, recognizing that “one significant issue common to the class may be sufficient to warrant certification,” 222 F. R. D. 137, 145 (ND Cal. 2004), found that the plaintiffs easily met that test. Absent an error of law or an abuse of discretion, an appellate tribunal has no warrant to upset the District Court’s finding of commonality. See Califano v. Yamasaki, 442 U. S. 682, 703 (1979) (“[M]ost issues arising under Rule 23 ... [are] committed in the first instance to the discretion of the district court.”).
*370 The District Court certified a class of “[a]ll women employed at any Wal-Mart domestic retail store at any time since December 26,1998.” 222 F. R. D., at 141-143 (internal quotation marks omitted). The named plaintiffs, led by Betty Dukes, propose to litigate, on behalf of the class, allegations that Wal-Mart discriminates on the basis of gender in pay and promotions. They allege that the company “[r]e-li[es] on gender stereotypes in making employment decisions such as . . . promotion^] [and] pay.” App. 55a. Wal-Mart permits those prejudices to infect personnel decisions, the plaintiffs contend, by leaving pay and promotions in the hands of “a nearly all male managerial workforce” using “arbitrary and subjective criteria.” Ibid. Further alleged barriers to the advancement of female employees include the company’s requirement, “as a condition of promotion to management jobs, that employees be willing to relocate.” Id., at 56a. Absent instruction otherwise, there is a risk that managers will act on the familiar assumption that women, because of their services to husband and children, are less mobile than men. See Dept, of Labor, Federal Glass Ceiling Commission, Good for Business: Making Full Use of the Nation’s Human Capital 151 (1995).
Women fill 70 percent of the hourly jobs in the retailer’s stores but make up only “33 percent of management employees.” 222 F. R. D., at 146. “[T]he higher one looks in the organization the lower the percentage of women.” Id., at 155. The plaintiffs’ “largely uncontested descriptive statistics” also show that women working in the company’s stores “are paid less than men in every region” and “that the salary gap widens over time even for men and women hired into the same jobs at the same time.” Ibid.] cf. Ledbetter v. Goodyear Tire & Rubber Co., 550 U. S. 618, 643 (2007) (Ginsburg, J., dissenting).
The District Court identified “systems for . . . promoting in-store employees” that were “sufficiently similar across regions and stores” to conclude that “the manner in which *371 these systems affect the class raises issues that are common to all class members.” 222 P. R. D., at 149. The selection of employees for promotion to in-store management “is fairly characterized as a ‘tap on the shoulder’ process,” in which managers have discretion about whose shoulders to tap. Id., at 148. Vacancies are not regularly posted; from among those employees satisfying minimum qualifications, managers choose whom to promote on the basis of their own subjective impressions. Ibid.
Wal-Mart’s compensation policies also operate uniformly across stores, the District Court found. The retailer leaves open a $2 band for every position’s hourly pay rate. Wal-Mart provides- no standards or criteria for setting wages within that band, and thus does nothing to counter unconscious bias on the part of supervisors. See id., at 146-147.
Wal-Mart’s supervisors do not make their discretionary decisions in a vacuum. The District Court reviewed means Wal-Mart used to maintain a “carefully constructed . . . corporate culture,” such as frequent meetings to reinforce the common way of thinking, regular transfers of managers between stores to ensure uniformity throughout the company, monitoring of stores “on a close and constant basis,” and “Wal-Mart TV,” “broadcas[t]... into all stores.” Id., at 151— 153 (internal quotation marks omitted).
The plaintiffs’ evidence, including class members’ tales of their own experiences,[4] suggests that gender bias suffused Wal-Mart’s company culture. Among illustrations, senior management often refer to female associates as “little Janie *372 Qs.” Plaintiffs’ Motion for Class Certification in No. 3:01-cv-02252-CRB (ND Cal.), Doc. 99, p. 21 (internal quotation marks omitted). One manager told an employee that “[m]en are here to make a career and women aren’t.” 222 F. R. D., at 166 (internal quotation marks omitted). A committee of female Wal-Mart executives concluded that “[stereotypes limit the opportunities offered to women.” Plaintiffs’ Motion for Class Certification in No. 3:01-cv-02252-CRB (ND Cal.), Doc. 99, at 24 (internal quotation marks omitted).
Finally, the plaintiffs presented an expert’s appraisal to show that the pay and promotions disparities at Wal-Mart “can be explained only by gender discrimination and not by . . . neutral variables.” 222 F. R. D., at 155. Using regression analyses, their expert, Richard Drogin, controlled for factors including, inter alia, job performance, length of time with the company, and the store where an employee worked. Id., at 159.[6] The results, the District Court found, were sufficient to raise an “inference of discrimination.” Id., at 155-160.
C
The District Court’s identification of a common question, whether Wal-Mart’s pay and promotions policies gave rise to unlawful discrimination, was hardly infirm. The practice of delegating to supervisors large discretion to make personnel decisions, uncontrolled by formal standards, has long been known to have the potential to produce disparate effects. Managers, like all humankind, may be prey to biases *373 of which they are unaware.[6] The risk of discrimination is heightened when those managers are predominantly of one sex, and are steeped in a corporate culture that perpetuates gender stereotypes.
The' plaintiffs[5] allegations' resemble those in one of the prototypical cases in this area, Leisner v. New York Tel. Co., 358 F. Supp. 359, 364-365 (SDNY 1973). In deciding on promotions, supervisors in that case were to start with objective measures; but ultimately, they were to “look at the individual as a total individual.” Id., at 365 (internal quotation marks omitted). The final question they were to ask and answer: “Is this person going to be successful in our business?” Ibid, (internal quotation marks omitted). It is hardly surprising that for many managers, the ideal candidate was someone with characteristics similar to their own.
We have held that “discretionary employment practices” can give rise to Title VII claims, not only when such practices are motivated by discriminatory intent but also when they produce discriminatory results. See Watson v. Fort Worth Bank & Trust, 487 U. S. 977, 988, 991 (1988). But see ante, at 357 (“[Pjroving that [a] discretionary system has produced a . . . disparity is not enough.”). In Watson, as here, an employer had given its managers large authority over promotions. An employee sued the bank under Title VII, alleging that the “discretionary promotion system” *374 caused a discriminatory effect based on race. 487 U. S., at 984 (internal quotation marks omitted). Four different supervisors had declined, on separate occasions, to promote the employee. Id., at 982. Their reasons were subjective and unknown. The employer, we noted, “had not developed precise and formal criteria for evaluating candidates”; “[i]t relied instead on the subjective judgment of supervisors.” Ibid.
Aware of “the problem of subconscious stereotypes and prejudices,” we held that the employer’s “undisciplined system of subjective decisionmaking” was an “employment practic[e]” that “may be analyzed under the disparate impact approach.” Id., at 990-991. See also Wards Cove Packing Co. v. Atonio, 490 U. S. 642, 657 (1989) (recognizing “the use of ‘subjective decision making’” as an “employment prac-tie[e]” subject to disparate-impact attack).
The plaintiffs’ allegations state claims of gender discrimination in the form of biased decisionmaking in both pay and promotions. The evidence reviewed by the District Court adequately demonstrated that resolving those claims would necessitate examination of particular policies and practices alleged to affect, adversely and globally, women employed at Wal-Mart’s stores. Rule 23(a)(2), setting a necessary but not a sufficient criterion for class-action certification, demands nothing further.
II
A'
The Court gives no credence to the key dispute common to the class: whether Wal-Mart’s discretionary pay and promotion policies are discriminatory. See ante, at 349 (“Reciting” questions like “Is [giving managers discretion over pay] an unlawful employment practice?” “is not sufficient to obtain class certification.”). “What matters,” the Court asserts, “is not the raising of common ‘questions,’” but whether there are “[dissimilarities within the proposed *375 class” that “have the potential to impede the generation of common answers.” Ante, at 350 (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N. Y. U. L. Rev. 97, 132 (2009); some internal quotation marks omitted).
The Court blends Rule 23(a)(2)’s threshold criterion with the more demanding criteria of Rule 23(b)(3), and thereby elevates the (a)(2) inquiry so that it is no longer “easily satisfied,” 5 J. Moore et al., Moore’s Federal Practice §23.23[2], p. 23-72 (3d ed. 2011).[7] Rule 23(b)(3) certification requires, in addition to the four 23(a) findings, determinations that “questions of law or fact common to class members predominate over any questions affecting only individual members” and that “a class action is superior to other available methods for . . . adjudicating the controversy.”[8]
*376 The Court’s emphasis on differences between class members mimics the Rule 23(b)(8) inquiry into whether common questions “predominate” over individual issues. And by asking whether the individual differences “impede” common adjudication, ante, at 350 (internal quotation marks omitted), the Court duplicates 23(b)(3)’s question whether “a class action is superior” to other modes of adjudication. Indeed, Professor Nagareda, whose “dissimilarities” inquiry the Court endorses, developed his position in the context of Rule 23(b)(3). See 84 N. Y. U. L. Rev., at 131 (Rule 23(b)(3) requires “some decisive degree of similarity across the proposed class” because it “speaks of common ‘questions’ that ‘predominate’ over individual ones”).[9] “The Rule 23(b)(3) predominance inquiry” is meant to “tes[t] whether proposed classes are sufficiently cohesive to warrant adjudication by representation.” Amchem Products, Inc. v. Windsor, 521 U. S. 591, 623 (1997). If courts must conduct a “dissimilarities” analysis at the Rule 23(a)(2) stage, no mission remains for Rule 23(b)(3).
Because Rule 23(a) is also a prerequisite for Rule 23(b)(1) and Rule 23(b)(2) classes, the Court’s “dissimilarities” position is far reaching. Individual differences should not bar a Rule 23(b)(1) or Rule 23(b)(2) class, so long as the Rule 23(a) threshold is met. See id., at 623, n. 19 (Rule 23(b)(1)(B) “does not have a predominance requirement”); Yamasaki, 442 U. S., at 701 (Rule 23(b)(2) action in which the Court noted that “[i]t is unlikely that differences in the factual background of each claim will affect the outcome of the legal *377 issue”). For example, in Franks v. Bowman Transp. Co., 424 U. S. 747 (1976), a Rule 23(b)(2) class of African-American truckdrivers complained that the defendant had discriminatorily refused to hire black applicants. We recognized that the “qualification[s] and performance” of individual class members might vary. Id., at 772 (internal quotation marks omitted). “Generalizations concerning such individually applicable evidence,” we cautioned, “cannot serve as a justification for the denial of [injunctive] relief to the entire class.” Ibid.
B
The “dissimilarities” approach leads the Court to train its attention on what distinguishes individual class members, rather than on what unites them. Given the lack of standards for pay and promotions, the majority says, “demonstrating the invalidity of one manager’s use of discretion will do nothing to demonstrate the invalidity of another’s.” Ante, at 356-356.
Wal-Mart’s delegation of discretion over pay and promotions is a policy uniform throughout all stores. The very nature of discretion is that people will exercise it in various ways. A system of delegated discretion, Watson held, is a practice actionable under Title YII when it produces discriminatory outcomes. 487 U. S., at 990-991; see supra, at 373-374. A finding that Wal-Mart’s pay and promotions practices in fact violate the law would be the first step in the usual order of proof for plaintiffs seeking individual remedies for companywide discrimination. Teamsters v. United States, 431 U. S. 324, 359 (1977); see Albemarle Paper Co. v. Moody, 422 U. S. 405, 415-423 (1975). That each individual employee’s unique circumstances will ultimately determine whether she is entitled to backpay or damages, § 2000e-5(g)(2)(A) (barring backpay if a plaintiff “was refused . . . advancement ... for any reason other than discrimination”), should not factor into the Rule 23(a)(2) determination.
*378 * * *
The Court errs in importing a “dissimilarities” notion suited to Rule 23(b)(3) into the Rule 23(a) commonality inquiry. I therefore cannot join Part II of the Court’s opinion.

 The plaintiffs requested Rule 23(b)(3) certification as an alternative, should their request for (b)(2) certification fail. Plaintiffs’ Motion for Class Certification in No. 3:01-cv-02252-CRB (ND Cal.), Doc. 99, p. 55.

 Rule 23(a) lists three other threshold requirements for class-action certification: “(1) the class is so numerous that joinder of all members is impracticable”; “(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.” The numerosity requirement is clearly met and Wal-Mart does not contend otherwise. As the Court does not reach the typicality and adequacy requirements, ante, at 349, n. 5,1 will not discuss them either, but will simply record my agreement with the District Court’s resolution of those issues.

 The Court suggests Rule 23(a)(2) must mean more than it says. See ante, at 349-350. If the word “questions” were taken literally, the majority asserts, plaintiffs could pass the Rule 23(a)(2) bar by “[r]eciting . . . questions” like “Do all of us plaintiffs indeed work for Wal-Mart?” Ante, at 349. Sensibly road, however, the word “questions” moans disputed is sues, not any utterance crafted in the grammatical form of a question.

 The majority purports to derive from Teamsters v. United States, 431 U. S. 324 (1977), a rule that a discrimination claim, if accompanied by anecdotes, must supply them in numbers proportionate to the size of the class. Ante, at 358. Teamsters, the Court acknowledges, 3ee ante, at 358, n. 9, instructs that statistical evidence alone may suffice, 431 U. S., at 339; that decision eon hardly be said to establish a numerical floor before anecdotal evidence can be taken into account.

 The Court asserts that Drogin showed only average differences at the “regional and national level” between male and female employees. Ante, at 356 (internal quotation marks omitted). In fact, his regression analy-ses showed there were disparities within stores. The majority’s contention to the contrary reflects only an arcane disagreement about statistical method — which the District Court resolved in the plaintiffs’ favor. 222 F. R. D. 137, 157 (ND Cal. 2004). Appellate review is no occasion to disturb a trial court’s handling of factual disputes of this order.

 An example vividly illustrates how subjective decisionmaking can be a vehicle for discrimination. Performing in symphony orchestras was long a male preserve. Goldin & Rouse, Orchestrating Impartiality: The Impact of “Blind” Auditions on Female Musicians, 90 Am. Eeon. Rev. 715, 715-716 (2000). In the 1970’s orchestras began hiring musicians through auditions open to all comers. Id., at 716. Reviewers were to judge applicants solely on their musical abilities, yet subconscious bias led some reviewers to disfavor women. Orchestras that permitted reviewers to see the applicants hired far fewer female musicians than orchestras that conducted blind auditions, in which candidates played behind opaque screens. Id., at 738.

 Tho Court placos considorablo weight on General Telephone Co. of Southwest v. Falcon, 457 U. S. 147 (1982). Ante, at 352-355. That case has little relevance to the question before the Court today. The lead plaintiff in Falcon alleged discrimination evidenced by the company’s failure to promote him and other Mcxican-American employees and failure to hire Mexican-American applicants. There were “no common questions of law or fact” between the elaimo of the lead plaintiff and the applicant class. 457 U. S., at 162 (Burger, C. J., concurring in part and dissenting in part) (emphasis added). The plaintiff-employee alleged that the defendant-employer had discriminated against him intentionally. The applicant clase elaimo, by contract, were “advanced under the ‘adverse impact’ the ory,” ibid., appropriate for facially neutral practices. “[T]he only commonality [wa]s that respondent io a Mexiean-American and he seeks to represent a class of Mexican-Americans.” Ibid. Here the same practices touch and concern all members of the class.

 “A class action may be maintained if Rule 23(a) is satisfied and if:
“(1) prosecuting separate actions by or against individual class mem bers would create a risk of... inconsistent or varying adjudications... [or] adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members . . . ;
“(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief..; io appro priate respecting the class as a whole; or
*376 “(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual mem-bors, and that a class action io oupcrior to other available methods for fairly and efficiently adjudicating the controversy.” Fed. Rule Civ. Proc. 23(b).

 Cf. supra, at 369 (Rule 23(a) commonality prerequisite satisfied by “[e]ven a single question ... common to the members of the class” (quoting Nagareda, The Preexistence Principle and the Structure of the Class Action, 103 Colum. L. Rev. 149,176, n. 110 (2003)).