Elvis **MOODIE**, Rayon Fisher, Desmond Ellis, and Keisha Collins–Ennis, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**KIAWAH ISLAND INN COMPANY, LLC, d/b/a Kiawah Island Golf Resort, Defendant.**

No. 2:15–cv–1097–RMG.

United States District Court, D. South Carolina, Charleston Division.

Signed Aug. 24, 2015.

James M. Knoepp, Michelle Rose La-pointe, Sarah Marion Rich, Atlanta, GA, Lucy Clark Sanders, Nancy Bloodgood, Foster Law Firm, Daniel Island, SC, for Plaintiff.

Cherie Wilson Blackburn, Mary Hughes Cherry, Nexsen Pruet, James B. Hood, Hood Law Firm, Charleston, SC, David John Garrett, Nexsen Pruet, Raleigh, NC, for Defendant.

## ORDER

RICHARD MARK GERGEL, District Judge.

This matter is before the Court on Plaintiffs' Motion for Certification of a Rule 23 Class Action as to Counts II, III, and IV of the Complaint. For the reasons stated below, the motion is GRANTED IN PART AND DENIED IN PART.

### I. Background

Defendant operates a resort on Kiawah Island, South Carolina. (Dkt. No. 1 at ¶ 17; Dkt. No. 12 at 1). Defendant imported foreign workers from Jamaica under the federal H–2B visa program during 2012, 2013, 2014, and is doing so again in 2015. (Dkt. No. 1 at ¶¶ 22, 24; Dkt. No. 12 at 1; *see also* H–2B Disclosure Data, *available at* http://www. foreignlaborcert.doleta.gov/performancedata. cfm (last visited Aug. 19, 2015)). Plaintiffs are Jamaican residents imported by Defendant under the H–2B program during the 2013 and 2014 seasons. (Dkt. Nos. 19–3, 19–4, 19–5, and 19–6). Plaintiffs filed this action alleging violations of the Fair Labor Standards Act (FLSA), violations of the South Carolina Payment of Wages Act (SCPWA), and breach of contract claims. (Dkt. No. 1).

With regard to the FLSA, Plaintiffs allege that (1) Defendant failed to reimburse them

for pre-employment expenses that they incurred primarily for the benefit of Defendant resulting in wages below the federal minimum wage during their first week of work, (2) Defendant made unreasonable and improper deductions from their wages for unreasonably high housing and transportation costs resulting in wages below the federal minimum wage, and (3) Defendant failed to pay them the Supplemental Prevailing Wage mandated by the Department of Labor (DOL) in 2013, resulting in a failure to pay the proper overtime wage as required by FLSA. (Dkt. No. 1 at 5–13, 18–19). The Court has granted Plaintiffs' motion for preliminary certification of these FLSA claims in Count I. (Dkt. No. 47).

In the instant motion, Plaintiffs move for class certification of their state law claims found in Counts II, III, and IV. (Dkt. No. 19). Since the filing of this motion, the Court has dismissed Count IV of the Complaint. (Dkt. No. 29 at 27–28). Therefore, Plaintiffs' motion for certification as to Count IV is denied as moot.

In Count II, Plaintiffs allege that Defendant violated the SCPWA by (1) failing to pay them all wages due and (2) failing to provide written notice at the time of hire of the deductions to be taken from their wages. The Court has dismissed this count to the extent that it seeks payment of the federal minimum wage or payment at the supplemental prevailing wage rate during overtime weeks in 2013. (Dkt. No. 49). Thus, the claims that remain in Count II are Plaintiffs' claims that Defendant failed to pay all wages due (a) during the first week of work because de facto deductions for pre-employment expenses brought their wages below the H–2B prevailing wage, (b) during other weeks because Defendant made unreasonable and improper deductions from their wages for unreasonably high housing and transportation costs resulting in wages below the H–2B prevailing wage, and (c) during non-overtime weeks in 2013 because Defendant failed to pay them the Supplemental Prevailing Wage mandated by the DOL, as well as Plaintiffs' claims that they were not properly notified of deductions at the time of hire as required by

SCPWA. (See Dkt. No. 1, Dkt. No. 49 at 21–22).

In Count III, Plaintiffs allege that Defendant breached its employment contracts with Plaintiffs by failing to pay the H–2B prevailing wage and supplemental prevailing wage. (Dkt. No. 1 at 21–22). Again, this claim is based on Plaintiffs' allegations that de facto deductions for pre-employment expenses brought their wages below the H–2B prevailing wage during the first week of work, that Defendant made unreasonable and improper deductions from their wages for unreasonably high housing and transportation costs resulting in wages below the H–2B prevailing wage, and that Defendant failed to pay them the Supplemental Prevailing Wage mandated by the DOL in 2013 during non-overtime weeks. (See Dkt. No. 1). The Court dismissed this count to the extent that Plaintiffs relied on promises Defendant made to the DOL but allowed the claims to go forward under the theory that the H–2B regulations were the law at the time the contract was created and, therefore, constitute terms of the employment contract. (Dkt. No. 49 at 23–27).

Plaintiffs seek class certification of these claims in Counts II and III, with the proposed class consisting of

All those individuals admitted as H–2B temporary foreign workers pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b) who were employed by Defendant in 2012, 2013, and 2014.

(Dkt. No. 19–1 at 2). Defendant has filed an opposition to the motion, (Dkt. No. 25), and Plaintiff has filed a reply, (Dkt. No. 32).

## II. Legal Standard

■ "The class-action device, which allows a representative party to prosecute his own claims and the claims of those who present similar issues, is an exception to the general rule that a party in federal court may vindicate only his own interests," *Thorn v. Jefferson–Pilot Life Ins. Co.,* 445 F.3d 311, 318 (4th Cir.2006) (citing *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). "Chief among the justifications for this device is its efficiency: adjudication of a properly-constituted class action

generally has res judicata effect and 'saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion.'" *Id.* (quoting *Califano v. Yamasaki,* 442 U.S. 682, 701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)). "To ensure this benefit is realized, however, and to protect both the rights of the absent plaintiffs to present claims that are different from those common to the class and the right of the defendant to present facts or raise defenses that are particular to individual class members, district courts must conduct a 'rigorous analysis' to ensure compliance with Rule 23, ... paying careful attention to the requirements of that Rule." *Id.* (internal citations and quotations omitted).

To be certified, a proposed class must satisfy the four prerequisites of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation, as well as one of the three categories in Rule 23(b). *EQT Prod. Co. v. Adair,* 764 F.3d 347, 357 (4th Cir.2014). Here, Plaintiffs seek certification under Rule 23(b)(3). Rule 23(b)(3) requires that "(1) common questions of law or fact must predominate over any questions affecting only individual class members; and (2) proceeding as a class must be superior to other available methods of litigation." *Id.;* see also Fed.R.Civ.P. 23(b)(3).

■ A party seeking class certification must do more than plead compliance with the Rule 23 requirements. *Adair,* 764 F.3d at 357. She "must present evidence that the putative class complies with Rule 23." *Id.* at 358. Plaintiffs bear the burden of demonstrating compliance with Rule 23, "but the district court has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied." *Id.* "Although Rule 23 does not give district courts a license to engage in free-ranging merits inquiries at the certification stage, a court should consider merits questions to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 357–58 (internal quotations omitted); *accord Brown v. Nucor Corp.,* 785 F.3d 895, 903 (4th Cir.2015).

## III. Discussion

### A. Readily Identifiable Class

■ "Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable.'" *EQT Prod. Co. v. Adair,* 764 F.3d 347, 358 (4th Cir.2014). In other words, the court must be able to "readily identify the class members in reference to objective criteria." *Id.* "The plaintiffs need not be able to identify every class member at the time of certification. But if class members are impossible to identify without extensive and individualized fact-finding or mini-trials, then a class action is inappropriate." *Id.* (internal quotations omitted). *Id.*

■ Plaintiffs argue that the class can be easily ascertained by examining Defendant's payroll records and petitions to the U.S. Citizenship and Immigration Services. (Dkt. No. 19–1). Defendant does not dispute that it would be easy ascertain who were H–2B temporary foreign workers employed by it in 2012, 2013, and 2014. (*See* Dkt. No. 25 at 4–7). Instead, Defendant argues that Plaintiffs must certify six different classes, one for each factual allegation that serves as a basis for Plaintiffs' claims: (1) H–2B workers employed by Defendant in 2012, 2013, and 2014 who were not reimbursed for pre-employment expenses, (2) H–2B workers employed by Defendant in 2012, 2013, and 2014 who were not informed in writing of the agree-upon wages and applicable deductions, (3) H–2B workers employed by Defendant in 2012, 2013, and 2014 who were not paid the H–2B prevailing wage, (4) H–2B workers employed by Defendant in 2013 who were not paid the supplemental prevailing wage; (5) H–2B workers employed by Defendant in 2012, 2013, and 2014 who lived in Defendant-provided housing and had deductions made from their wages for such housing, and (6) H–2B workers employed by Defendant in 2012, 2013, and 2014 that used Defendant-provided transportation and had deduction made from their wages for such transportation. (Dkt. No. 25 at 4).

Defendant has cited no authority for its novel proposition that Plaintiffs must pro-

pose separate class for every claim in their complaint. This argument ignores the plain text of Rule 23, which provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular *issues.*" Fed.R.Civ.P. 23(c)(4) (emphasis added). Similarly, Fed.R.Civ.P. 23(a)(2) allows for a class action if, among other things, "there are *questions* [plural] of law or fact common to the class," and Fed. R.Civ.P. 23(b)(3) provides that a class action may be maintained if, among other things, "the court finds that the *questions* [plural] of law or fact common to class members predominate over any questions affecting only individual members ..." There is simply no requirement that Plaintiffs propose a separate class for each claim in their complaint, and Defendant's arguments based on this erroneous assumption must be rejected.[1] *See Haywood v. Barnes,* 109 F.R.D. 568, 576 (E.D.N.C.1986) (finding threshold requirement met for a proposed class of "all migrant farmworkers who were used or employed by the [defendant] at a specific location, during a specific time frame, and who were injured *in one of four* delineated ways.") (emphasis added).

The members of Plaintiffs' proposed class are easily identified by reference to Defendant's payroll records and the standard forms it must use to employ H–2B workers during the relevant time period. Indeed, the Court ordered that Defendant identify all such H–2B workers employed by it for the last three years in its July 27, 2015 Order granting Plaintiffs' motion for preliminary certification of their FLSA claims. (Dkt. No. 47 at 11). The deadline for identifying such workers has past, and Defendant has apparently not had any problems doing so. Plaintiffs received a list from Defendant and has mailed the FLSA collective action notices to all H–2B workers employed by the Defendant between March 2012 and the present. (Dkt. No. 56). Therefore, the Court finds

that the proposed class is readily ascertainable.

**B. Numerosity**

Under Rule 23, a class must be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). "No specified number is needed to maintain a class action." *Brady v. Thurston Motor Lines,* 726 F.2d 136, 145 (4th Cir.1984). Instead, "the determination rests on the court's practical judgment in light of the particular facts of the case." *Lott v. Westinghouse Savannah River Co.,* 200 F.R.D. 539, 550 (D.S.C.2000); *accord Gen. Tel. Co. of the Nw. v. Equal Emp't Opportunity Comm'n,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980) ("The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations.")' "[P]racticability of joinder depends on many factors, including, for example, the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion." *Baltimore v. Laborers' Int'l Union of N. Am.,* 67 F.3d 293 (table), 1995 WL 578084 at *1 (4th Cir.1995); *Lott,* 200 F.R.D. at 550.

Here, the record does not contain the exact number of the members of the class, but there are several hundred. Defendant requested 171 H–2B visas in 2012, 198 H–2B visas in 2013, and 215 H–2B visas in 2014. (Dkt. Nos. 1–3, 1–4; H–2B Disclosure Data, *available at* http://www.foreign laborcert.doleta.gov/performancedata.cfm (last checked Aug. 19, 2015)). As Defendant notes some of these positions may have been filled with returning workers from a prior year, and, while unlikely,[2] Defendant may have filled some of the requested positions with non–H–2B workers. (Dkt. No. 25 at 7). Therefore, the number in the class is likely less than 584, the total number of H–2B visas requested over the three years. However, the number of class members is very likely at

---

1. To the extent that Defendant attempts to argue that these questions of fact and law are not actually common to the class proposed by Plaintiffs, the Court addresses these arguments below, under the commonality analysis.

2. As a part of the application for temporary labor certifications for these H–2B visas, Defendant attested that it was unable to locate qualified U.S. applicants for the jobs. (*E.g.,* Dkt. No. 1–3 at 10).

least 215, the minimum number of H–2B visas requested in a single year.[3]

Under the circumstances present here, the Court finds the numerosity requirement met. The class consists of between 215 and 584 members, and the exact number is easily attainable with minor discovery. The proposed class members are temporary foreign workers who permanently reside in a foreign country, likely lack financial resources, lack familiarity with the U.S. Court system and have relatively small claims. All of these factors make Plaintiffs unlikely to seek vindication of their rights. Due to these factors, joinder of all members of the class is impractical. *See Rosiles–Perez v. Superior Forestry Serv., Inc.,* 250 F.R.D. 332, 338–39 (M.D.Tenn.2008) (considering these factors among others and determining the numerosity requirement met); *Recinos–Recinos v. Express Forestry, Inc.,* 233 F.R.D. 472, 478–79 (E.D.La.2006) ("Because the proposed class is made up of about 300 migrant workers, many of whom reside in Guatemala and Mexico, and because of the relatively small size of the individual claims, the Court finds that Rule 23(a)'s numerosity requirement has been met.").

## C. Commonality

To maintain a class action, there must be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). In a class action brought under Rule 23(b)(3), as this one is, "the 'commonality' requirement of Rule 23(a)(2) is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over other questions." *Lienhart v. Dryvit Sys., Inc.,* 255 F.3d 138, 146 n. 4 (4th Cir.2001) (internal quotes omitted). Therefore, the Court will address commonality again under the Rule 23(b)(3) analysis below. However, the Court finds that the Rule 23(a)(2) requirement is met.

"Although the rule speaks in terms of common questions, 'what matters to class certification ... [is] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *EQT Prod. Co. v. Adair,* 764 F.3d 347, 360 (4th Cir.2014) (quoting *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011)) (emphasis in original). "A single common question will suffice, but it must be of such a nature that its determination will resolve an issue that is central to the validity of each one of the claims in one stroke." *Adair,* 764 F.3d at 360 (internal citations and quotations omitted).

Here, some such questions have already been resolved by the Court, such as whether Defendant's promises to DOL and applicable H–2B regulations are a part of the H–2B workers' employment contracts with Defendants. (*See* Dkt. No. 49 at 22–27). Other central questions remain to be resolved, such as (1) whether pre-employment visa and transportation costs were *de facto* deductions from wages that should have been disclosed under SCPWA, (2) whether the amounts Defendant deducted from H–2B workers' wages for housing and transportation costs were excessive,[4] and (3), whether, under the terms of the employment contracts between H–2B workers and Defendant, Defendant was required to pay the supplemental prevailing wage in 2013. Regardless of the specific wage paid to individual class members, these questions are "central to the validity of each one of the claims." *Adair,* 764 F.3d at 360; *see also Parker v. Asbestos Processing, LLC,* No. 0:11–CV–01800–JFA, 2015 WL 127930, at *7 (D.S.C. Jan. 8, 2015) ("Where the injuries complained of by named plaintiffs allegedly result from the same unlawful pattern, practice, or policy of the defendants, the commonality requirement is usually satisfied."). Therefore, the Court finds the commonality requirement met.

---

3. Notably, Defendant knows how exactly many H–2B workers it employed each year and could have provided that information but has chosen not to do so.

4. The evidence in the record is that every H–2B worker was charged the same $165 for housing every two weeks and $36 for transportation every two weeks. (*See* Dkt. No. 19–3 at ¶¶ 17, 19; Dkt. No. 19–4 at ¶¶ 14, 16; Dkt. No. 19–5 at ¶¶ 14, 16; Dkt. No. 19–6 at ¶¶ 17, 19).

## D. Typicality

 Typicality requires that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir.2001) (quoting *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)); *see also* Fed.R.Civ.P. 23(a)(3). "The typicality requirement is met if a plaintiff's claim arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Parker v. Asbestos Processing, LLC*, No. 0:11 –CV–01800–JFA, 2015 WL 127930, at *7 (D.S.C. Jan. 8, 2015).

 The Court finds the typicality requirement met here. Each of the named Plaintiffs testify that they paid pre-employment transportation and visa costs not reimbursed by Defendant, testify that Defendant deducted housing and transportation costs from their wages in allegedly excessive amounts, and allege that they were not informed of these deductions at the time of hire as required by SCPWA. (*See* Dkt. Nos. 1, 19–3, 19–4, 19–5, and 19–6). Two of the named plaintiffs worked for Defendant in 2013 and allege they should have been paid the supplemental prevailing wage. (*See* Dkt. Nos. 1, 19–3, 19–6). Thus, the class representatives' claims "arise[ ] from the same ... course of conduct that gives rise to the claims of other class members and [are] based on the same legal theor[ies]." *Parker*, 2015 WL 127930, at *7.

Defendant argues that Plaintiffs have failed to show that "each one of them have suffered all of the injuries alleged ..." and, thus, fail the typicality requirement. (Dkt. No. 25 at 9). The Court disagrees. Each of the Plaintiffs have shown, by affidavit, that they have suffered the injuries alleged in the Complaint related to pre-employment expenses and housing and transportation expenses. (*See* Dkt. Nos. 19–3, 19–4, 19–5, 19–6).

The claims based on the supplemental prevailing wage issued by DOL in 2013 only apply to H–2B workers employed by Defendant in 2013. Two of the named Plaintiffs were employed by Defendant in 2013 and have a "typical" claim on the supplemental prevailing wage issue. As the proposed class is made of workers who will have this claim (i.e., those workers employed in 2013) as well as workers who will not have this additional claim (i.e., those employed in 2012 and 2014 but not 2013), it is appropriate that there are named Plaintiffs who do and do not have this one additional claim. Typicality does not require that every class representative have exactly the same claims as every member of the class. *See Haywood v. Barnes*, 109 F.R.D. 568, 578 (E.D.N.C.1986) ("[T]ypicality does not require that the claims or defenses of the class representatives be identical or perfectly coextensive with the claims or defenses of the members.").

## E. Adequacy of Representation

 Named plaintiffs must be able to "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). This requirement is "a two-pronged inquiry, requiring evaluation of: (1) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether Plaintiffs' claims are sufficiently interrelated with and not antagonistic to the class claims as to ensure fair and adequate representation." *Lott v. Westinghouse Savannah River Co.*, 200 F.R.D. 539, 561 (D.S.C.2000); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (Rule 23(a)(4) requirement "raises concerns about the competency of class counsel and conflicts of interest.").

Class counsel has considerable experience in class action litigation and sufficient funds to advance appropriate costs of this litigation. (Dkt. No. 19–2). Defendant does not challenge the qualifications of counsel, and the Court has no doubt that class counsel will ably and vigorously prosecute this action on behalf of the class.

 Turning to the second prong, "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S.Ct. 2231,

138 L.Ed.2d 689 (1997). Here, there are no apparent conflicts of interest between the proposed class representatives and class members. Defendant argues that the named plaintiffs do not adequately represent the class because none of them were employed by Defendant in 2012. (Dkt. No. 25 at 10). However, there is no evidence in the record that the claims of workers employed in 2012 would differ from those of workers employed in 2013 or 2014. There is no reason to believe, and Defendant does not suggest, that claims based on Defendant's alleged failure to reimburse pre-employment visa and travel costs and Defendant's alleged actions in making improper and excessive deductions for housing and transportation costs would differ in any meaningful way between 2012, 2013, and 2014. Therefore, as there is no meaningful difference in these claims, the Court finds that the named Plaintiffs can adequately represent class members that worked for Defendant in 2012.

Next, Defendant argues that three of the four named plaintiffs are not current employees, "which prohibit them from representing current H–2B workers at Kiawah." (Dkt. No. 25 at 10). The proposed class includes former employees of Defendant, who worked in for Defendant in a prior year but not 2015, as well as current employees of Defendant, who worked for Defendant in a prior year, and are working for Defendant again in 2015. Therefore, it is appropriate for the class representatives to include both former and current employees, which they do.

It is certainly true that the interests of former employees and current employees can conflict, such as where "a former employee's primary interest necessarily centers on recovering back pay, while a current employee may well be far more interested in obtaining injunctive relief." *Slader v. Pearle Vision Inc.*, No. 00 CIV. 2797 JSR, 2000 WL 1702026, at *1 (S.D.N.Y. Nov. 14, 2000); *see also Oetinger v. First Residential Mortgage Network, Inc.*, No. CIV. A. 3:06–CV–381–, 2009 WL 2162963, at *5 (W.D.Ky. July 16, 2009) ("Plaintiffs, who have no stake in the ongoing practices of [the defendant], do not adequately represent current employees."). However, these concerns are not present, or are at least dramatically reduced, under the circumstances present here.

First, unlike in the two cases cited by Defendant, the class members here do not include permanent employees with a long-term interest in Defendant's future practices. They are **temporary** foreign workers brought to this county for single season of a few months. All of Defendant's current H–2B workers will be former employees as of December 1, 2015. *See* 2015 H–2B Disclosure Data, *available at* http://www.foreign laborcert.doleta.gov/performancedata.cfm (last visited Aug. 19, 2015) (showing an end certification date of November 30, 2015). Thus, before this litigation is likely to be completed, the "current" employees will be "former" employees with the same interests as other former employees. To the extent that current 2015 H2B workers may hope to be brought back in 2016, so may 2014 H–2B workers hope to be brought back in 2016.

Second, one of the class representatives *is* a current employee. (Dkt. No. 19–3 at ¶ 1). Thus, to the extent that the interests of 2015 H–2B workers differ at all from other recent H–2B workers, these workers have a voice at the table and are adequately represented.

In sum, the Court finds that "the named plaintiff[s'] claim[s] and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence" and finds the Rule 23(a)(4) requirement met. *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 459 (4th Cir.2003).

**F. Predominance**

Under Rule 23(b)(3) "the questions of law or fact common to class members" must "predominate over any questions affecting only individual members." This "predominance requirement is similar to but 'more stringent' than the commonality requirement of Rule 23(a)." *Thorn v. Jefferson–Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir.2006).

Here, common questions of law and fact predominate. Indeed, the claims in the Complaint raise only issues common to the class: (1) whether the contractual wage in Defendant's employment contracts with H–

2B workers was the H–2B prevailing wage; (2) whether pre-employment visa and transportation costs were *de facto* deductions from wages that should have been disclosed under SCPWA; (3) whether pre-employment visa and transportation costs were *de facto* deductions from wages that caused wages to fall below the agreed upon wage; (4) whether the amounts Defendant deducted from H–2B workers wages for housing and transportation costs were excessive, causing wages to fall below the agreed upon wage; (5) whether, under the terms of the employment contracts between H–2B workers and Defendant, Defendant was required to pay the supplemental prevailing wage in 2013. There are no issues specific to individual Plaintiffs or individual members of the class.

Defendant argues that individualized measures of damages cause questions affecting individuals to predominate over common questions of fact or law, (Dkt. No. 25 at 11). However, the Fourth Circuit has held that

> Rule 23 contains no suggestion that the necessity for individual damage determinations destroys commonality, typicality, *or predominance,* or otherwise forecloses class certification. In fact, Rule 23 explicitly envisions class actions with such individualized damage determinations. *See* Fed.R.Civ.P. 23 advisory committee's note (1966 Amendment, subdivision (c)(4)) (noting that Rule 23(c)(4) permits courts to certify a class with respect to particular issues and contemplates possible class adjudication of liability issues with "the members of the class ... thereafter ... required to come in individually and prove the amounts of their respective claims."); *see also* 5 Moore's Federal Practice § 23.23[2] (1997) ("[T]he necessity of making an individualized determination of damages for each class member generally does not defeat commonality.").

*Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 427–28 (4th Cir.2003) (emphasis added). The predominance requirement is met where common questions predominate over individual questions *as to liability,* which is the case here.[5] *Id.* at 428. Therefore, the Court finds the predominance requirement met.

## G. Superiority

Under Rule 23(b)(3), the moving party must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Factors relevant to this question are

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

 Here, class members are residents of a foreign country, likely to have limited financial resources, unfamiliar with the U.S. Court system, and have relatively small claims. Therefore, it is unlikely that individual class members will bring separate actions to vindicate their claims. Indeed, no such litigation currently exists. "[F]or many of these claimants, collective action may offer the only realistic opportunity to recover." *EQT Prod. Co. v. Adair,* 764 F.3d 347, 371 (4th Cir.2014).

Concentrating the litigation in this district is desirable because Defendant conducts its business in this district, class members work for Defendant in this district, and witnesses and other evidence are likely located in this district. While the claims that Plaintiffs propose to class here are state law claims, Plaintiffs also bring FLSA claims raising federal questions. It is more efficient to resolve both sets of claims in a single forum and single litigation than to have parallel pro-

---

**5.** The Court also notes that while hourly rates and prevailing wage rates paid during 2012, 2013, and 2014 varied among members of the proposed class, they did not vary individual by individual. There were six (6) categories of H–2B workers (cooks, kitchen helpers, servers, housekeeping person, bellhops, and cabana attendants), and it appears that individuals in each category were paid the same rate. (*See, e.g.,* Dkt. No. 1–3 at 6; Dkt. No. 1 at 11).

ceedings. In sum, the Court finds that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).

### IV. Conclusion

For the reasons stated above, Plaintiffs' Motion for Certification of a Rule 23 Class Action (Dkt. No. 19) is **GRANTED IN PART AND DENIED IN PART.** As to Count IV, the motion is **DENIED AS MOOT.** As to Counts II and III of the of the Complaint, the motion is **GRANTED.** Pursuant to Rule 23(c)(1), the Court certifies the following class:

> All those individuals admitted as H–2B temporary foreign workers pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(b) who were employed by Defendant in 2012, 2013, and 2014.

The class claims are the claims contained in Counts II and III of the Complaint, not dismissed by the Court's August 4, 2015 Order. Pursuant to Rule 23(g), the Court appoints Plaintiffs' counsel of record as class counsel for this action. Plaintiffs' counsel shall file and serve a proposed Class Notice within fifteen (15) days of the date of this Order. Defendant shall have fifteen (15) days thereafter to file objections to the proposed Class Notice, if any.

**AND IT IS SO ORDERED.**